CAROLINA ACTION, Plaintiff,

v.

William E. SIMON, Secretary of the Treasury of the United States, et al., Defendants.

No. C–74–330–D.

United States District Court, M. D. North Carolina, Durham Division.

Feb. 28, 1975.

Thomas F. Loflin, III, and Ann S. Loflin, Durham, N. C., for plaintiff.

N. Carlton Tilley, Jr., U. S. Atty., and Ronald Shearin, Asst. U. S. Atty., Greensboro, N. C., and William I. Thornton, Jr. and Robert D. Holleman, Durham, N. C., for defendants.

MEMORANDUM OPINION

GORDON, Chief Judge.

This is a civil action brought by the plaintiff Carolina Action on behalf of its members and all persons residing in the City and County of Durham for injunctive and declaratory relief to enjoin construction of the proposed new county ju-

dicial building and Durham City Hall. Plaintiff charges a violation of the National Environmental Policy Act, 42 U.S.C. § 4321 et seq. (NEPA) and the State and Local Fiscal Assistance Act of 1972, 31 U.S.C. § 1221 et seq., known as the Revenue-Sharing Act, in that federal monies were disbursed by Secretary of Treasury Simon to partially finance the county building and city hall and no environmental impact statement was filed as to either structure as required by these two acts. Specifically, plaintiff alleges that Secretary Simon in his position as trustee of general revenue sharing funds had a duty to file an environmental impact statement before disbursing these funds to the city and county of Durham.

Before the Court is plaintiff's motion for a preliminary injunction enjoining the defendants from taking any further steps toward construction of the county and city buildings. In support of this motion, plaintiff alleges that itself and its class will be aggrieved by failure of defendants to comply with federal law since construction of these buildings will be seriously harmful to the environment. Plaintiff alleges harm to the environment in that the proposed buildings will be constructed on land insufficient in area for the size of the structure, the locations of the buildings will cause traffic congestion adversely affecting the quality of the environment, the buildings will not be served by adequate parking facilities, and that construction of the proposed buildings will take away land that could otherwise be utilized as open space to improve the environment for downtown Durham.

The defendants have all filed motions to dismiss in response to the complaint. While filing separate motions, the grounds supporting these motions are similar. Basically, defendants argue that the case should be dismissed because (1) plaintiff lacks standing to assert violations of the Revenue-Sharing Act and NEPA; (2) plaintiff fails to

state a claim for relief because NEPA, including its requirement concerning the filing of an environmental impact statement, is not applicable to a construction project in which general revenue sharing funds are being used and (3) the doctrine of laches should estop plaintiff from bringing this action in that it had substantial time to file suit several months prior to the commencement of this action and before substantial funds were expended toward construction.

The Court agrees with the defendants that plaintiff does not state a claim for relief in that NEPA does not apply to a project in which the only federal participation is the distribution of revenue sharing funds to aid local communities in financing the project. Therefore, it is not necessary to discuss the issues of standing or laches and, of course, the decision to dismiss is dispositive of the issue of injunctive relief.

There are several grounds which support this conclusion. Perhaps the strongest is based on the regulations of the Council on Environmental Quality (CEQ) which explicitly recognize the non-applicability of NEPA to projects built with revenue sharing funds.

"[NEPA applies to] new and continuing projects and program activities; . . . supported in whole or in part through Federal contracts, grants, subsidies, loans or other forms of funding assistance (except where such assistance is solely in the form of general revenue sharing funds . . . with no subsequent Federal agency control over the subsequent use of such funds). . . .

" . . . The action causing the impact must also be one where there is sufficient Federal responsibility and control to constitute Federal action in contrast to cases where such Federal control and responsibility are not present, as, for example, when Federal funds are distributed in the form of general revenue sharing to be used by State and local governments."[1]

1. Council on Environmental Quality, Preparation of Environmental Impact Statements:

Guidelines §§ 1500.5(a)(2), 1500.6(c), 38 Fed.Reg. at 20551–52 (1973). There is no

The CEQ was established by NEPA in 42 U.S.C. § 4342 and its duties and functions are set forth in 42 U.S.C. § 4344. Subsection (3) of § 4344 provides that the CEQ is "to review and appraise the various programs and activities of the Federal Government in the light of the policy set forth in title I of this Act . . . for the purpose of determining the extent to which such programs and activities are contributing to the achievement of such policy . . . ." The role of the CEQ was enhanced by an executive order authorizing the CEQ to issue guidelines for federal agencies for the preparation of impact statements and the implementation of § 4332 of NEPA.[2] It is concluded that the creation of the CEQ as an agency whose sole purpose is to implement and monitor NEPA and the active role of the CEQ in NEPA's application requires that its guidelines as to the applicability of NEPA to federal agency action should be given substantial weight. Indeed, the Court agrees with one commentator who has advocated that the CEQ be vested by Congress with the power to determine the extent of NEPA's applicability.[3]

Judicial deference to the pronouncements and regulations of the CEQ in cases involving the application of NEPA strongly affirms the court's position. Courts have followed CEQ guidelines and regulations in such critical areas as interpreting the statutory clause of "major Federal actions significantly affecting the quality of the human environment,"[4] in defining "the fullest extent possible" language of 42 U.S.C. § 4332[5] and the applicability of NEPA to projects commenced before enactment of the environmental legislation.[6] Most convincing is Justice Douglas' position that the CEQ is ultimately responsible for administration of NEPA and the evaluation of the performance of federal agencies in complying with the Act and, therefore, its determination should be given great weight.[7]

The Court is not unaware of argument and authority that the CEQ guidelines are not to be given such weight. The plaintiff contends that the CEQ exception of revenue sharing projects from NEPA requirements was only parenthetical, and not definitive. Additionally, commentators have argued that judicial deference to the CEQ's interpretation of

question that where there is no federal involvement, NEPA is not applicable. *See, e. g.,* Biderman v. Morton, 497 F.2d 1141 (2d Cir. 1974); O'Brien v. Brinegar, 379 F. Supp. 289 (D.Minn.1974).

2. 3 C.F.R. § 531 (1971), reprinted in 42 U. S.C. § 4321 at 10658 (1970); 36 Fed.Reg. 7724 (1970). *See* Note, Ely v. Velde: The Application of Federal Environmental Policy to Revenue Sharing Programs, 1972 Duke L.J. 667 for a discussion of the authority vested in the CEQ, its statutory and executive functions and the source of its authorization. 1972 Duke L.J. at 671.

3. 1972 Duke L.J. at 676–77. The author sets forth cogent reasons why the CEQ should be the body to enforce compliance with NEPA and why its determination as to the scope of NEPA should be given great weight:
"In view of the language creating CEQ and the subsequent Executive Order, it would, at the least, seem reasonable to conclude that vis-a-vis other agencies CEQ is the agency which could properly be vested

with the power to determine the extent of NEPA's applicability. . . . Empowering an agency established expressly for the purpose of implementing NEPA with authority to determine the statute's applicability will better assure that the national environmental policy . . . will be effectively implemented. *Id.* at 677."

4. Minnesota Public Interest Research Group v. Butz, 498 F.2d 1314, 1321 (8th Cir. 1974); Environmental Defense Fund v. TVA, 468 F.2d 1164, 1177 (6th Cir. 1972).

5. Environmental Defense, 468 F.2d at 1177, Ely v. Velde I, 451 F.2d 1130, 1135–36 n. 14 (4th Cir. 1971).

6. Minnesota Public Interest, 498 F.2d at 1321.

7. Warm Springs Dam Task Force v. Gribble, 417 U.S. 1301, 1309–10, 94 S.Ct. 2542, 41 L. Ed.2d 654 (1974) (Douglas, J., Opinion of Individual Justice in Chambers). This characterization of the CEQ is similarly stated by the Environmental Protection Agency, *Id.* at 1304–05, 94 S.Ct. 2542.

NEPA should be qualified[8] and there are cases asserting that CEQ guidelines are merely advisory and not binding.[9] The basis for this position is that NEPA did not vest the CEQ with authority to prescribe regulations governing compliance with NEPA and did not charge the CEQ with administration or enforcement of the statute. Moreover, these critics take the position that since the rationale behind CEQ's pronouncement concerning revenue sharing funds was not articulated, this was an ad hoc or parenthetical comment engendered by the prevailing rhetoric concerning the absence of federal involvement in the revenue sharing program. 60 Va. L.Rev. at 119–20.

The Court disagrees with this latter view of the CEQ role in the administration of NEPA and the weight to be given to its regulations. It is believed that an agency whose determination as to what is a major federal action and whose guidelines as to the content of environmental impact statements are generally accorded significant weight by the courts should be afforded substantial deference in their interpretation of the applicability of NEPA to revenue sharing funds. This is particularly true when the legislative history, statutory language and judicial construction of NEPA support this interpretation as they do here.

An examination of the relevant Fourth Circuit cases, particularly Ely v. Velde (I), 451 F.2d 1130 (4th Cir. 1971), and Ely v. Velde (II), 497 F.2d 252 (4th Cir. 1974), indicates that NEPA is not applicable to revenue sharing funds. Ely I held that NEPA was applicable to the construction of a state prison medical center funded in part with a block grant from the Law Enforcement Assistance Administration (LEAA) pursuant to the Safe Streets Act. In that case, the Fourth Circuit rejected the LEAA's contention that the "hands off" philosophy behind LEAA block grants to local law enforcement authorities precluded the application of NEPA. The grounds for this conclusion were that the intent of the "hands off" approach was to prevent the federalization of local law enforcement and that the realization of this objective did not conflict with a requirement that LEAA apply NEPA to its funded projects. 451 F.2d at 1135–37.

In Ely II, the Fourth Circuit reaffirmed this decision and addressed itself to the LEAA's contention that a lack of federal involvement in the projects funded under the Safe Streets Act precluded the application of NEPA. The court found sufficient federal contacts to make LEAA's participation "major federal action" and in setting forth their reasons distinguished revenue sharing funds and block grants:

"The significant point is that the state is retaining federal funds that it obtained for the center on the premise that it would comply with federal environmental Acts, while at the same time it is planning to construct the center without compliance. It may well be that even if the state had never applied for funds for the center, its overall block grant would not have been diminished, because such grants are apportioned on the basis of population and the state could have proposed projects of a lower priority than the center to secure approval of equivalent funds. But this we believe is irrelevant. *A block grant is not the*

---

8. Note, The Application of Federal Environmental Standards to the General Revenue Sharing Program: NEPA and Unrestricted Federal Grants, 60 Va.L.Rev. 114, 119–20.

9. Hiram Clarke Civic Club, Inc. v. Lynn, 476 F.2d 421, 424 (5th Cir. 1973) ; Greene Cty. Planning Bd. v. FPC, 455 F.2d 412 (2d Cir. 1972). It is significant to note that in nei-

ther of these cases was the court rejecting the CEQ guidelines so as to give NEPA a broader applicability. In one case, the CEQ guidelines were distinguished as being too stringent in its application of NEPA and in the other the important role of the CEQ in the administration of national environmental policy was affirmed.

*same as unencumbered revenue sharing, for the grant comes with strings attached.* The state voluntarily requested federal participation in the center and in this manner obtained construction funds conditioned upon compliance with NEPA and NHPA. The federal grant thus served national policy in two respects: it contributed to law enforcement in Virginia, and it encouraged preservation of environmental values at Green Springs. The state, we hold, is not entitled to use this money without fully observing both aspects of the national policy the grant was designed to promote. We conclude therefore that the district court erred in approving the state's decision to retain the funds, bypass NEPA and NHPA, and build the center." 497 F.2d at 256. (Emphasis added).

The context in which this distinction was made and the fact that it would not necessarily be dispositive of the issue we are deciding is fully realized, but the rationale behind the distinction is highly pertinent. The block grant from the LEAA was generated by Virginia's request for federal participation as part of a comprehensive plan filed with the LEAA in conformance with the purposes and requirements of the Safe Streets Act.[10] Under the Revenue Sharing Act, the funds are not disbursed as a consequence of a state's request and are not conditioned on the filing of a comprehensive plan but are disbursed almost automatically and with considerably less federal involvement.

■ Finally, an examination of the Revenue Sharing Act and its legislative history provides a final ground for dismissing this lawsuit. There is little dispute that the intent and objective of the Revenue Sharing Act was to return to the states and local communities revenues collected by the federal government so that the state and local governments could spend these funds according to their own perceived demands and objectives and not those of the federal government. This concept has been loosely referred to as a "no [federal] strings" approach to federal assistance as evidenced by pronouncements of the President and legislators involved in the Act's formulation.[11] The Office of Revenue Sharing has so construed the Act as well, announcing that only federal standards set forth in the Act will be applied. 60 Va.L.Rev. at 123 n. 58. The defendants press on the Court the proposition that the fundamental no strings philosophy of this legislation precludes the application of NEPA to revenue sharing projects since the Revenue Sharing Act itself makes no mention of NEPA applicability although NEPA was then in effect.

The plaintiff vigorously contends that the legislative history, while reflecting this "no strings" philosophy in the original perception of the Act, ultimately reveals a decision to place substantial federal controls on revenue sharing funds.[12] They point to the Act itself and the significant federal restrictions imposed on a local community's use of funds.

The Revenue Sharing Act does contemplate federal control at several stages. Sections 1241(b) and (c) request state and local governments to submit a report to the Secretary of the

---

10. 497 F.2d at 254, 256. The issue of federal involvement in grants from the LEAA to local entities arose in the context of an attempt by the State of Virginia to bypass compliance with NEPA on their prison medical center project by diverting the LEAA funds to other state projects and constructing the center with state funds. The Fourth Circuit would not allow this procedure asserting that the funds were granted with the understanding that the moneys would be used to foster the Safe Streets

Act's objectives which included the environmental policy as stated in NEPA. 497 F.2d at 256.

11. Weekly Compilation of Presidential Documents, Vol. 7, at 163, 165–67, 172; 1972 U.S.Code Cong. and Administrative News, at pp. 3874–3876, 3888–3889. (Other similar pronouncements are extensively cited in defendants' briefs.)

12. *See* Va.L.Rev. at 123–25.

Treasury "setting forth the amounts and purposes for which it plans to spend or obligate the funds which it expects to receive . . ." before obtaining revenue sharing funds. This provision is apparently tied in with the requirements that the funds be used only for priority expenditures, as defined in § 1222(a), that the projects funded be administered so as to ensure nondiscrimination and that the requirements concerning compliance with certain disbursement, auditing and reporting procedures and the fair labor standards of the Davis-Bacon Act be effectuated. 31 U.S.C. § 1243(a), § 1242. Penalties for noncompliance with these above requirements are set forth in the Act and include a 110 per cent repayment penalty for non-priority expenditures and withholding of payments for other violations. 31 U.S.C. §§ 1243(a)(3), 1243(b). Other provisions provide methods by which the Secretary may monitor or evaluate compliance and thereby enforce the requirements. 31 U.S.C. § 1243(c), § 1241(a).

Despite this impressive array of federal involvement in the Revenue Sharing procedure, the Court is not persuaded that another significant and conspicuous federal act, namely NEPA, should be read into the requirements for disbursement of revenue sharing funds. The requirements enumerated above relate exclusively to compliance with specifically designated priority uses and specifically named laws. The planned use report does not relate to the amount of money to be received and, more importantly, does not entail federal approval of any specific project or confine the discretion of local governments as to the purposes for which the funds should be spent.[13]

There are other substantial reasons which warrant the conclusion that Congress did not intend NEPA to apply to revenue sharing. The Revenue Sharing Act was enacted *after* NEPA was in effect and it is virtually inconceivable that if Congress had intended compliance with NEPA, it would not have so indicated in the Act. This is particularly true in light of its inclusion of other federal laws in the Act. It cannot be questioned that environmental considerations were much on the minds of legislators at the time of the revenue sharing bill's enactment. Moreover, it cannot be doubted that the applicability of NEPA to revenue sharing would have imposed such added responsibilities on the Secretary in administering revenue sharing that it likely would have been mentioned in the Act. Finally, the legislative history of NEPA indicates that Congress did not contemplate NEPA's applicability to unrestricted block grants of federal funds to states in which there was no continuing federal role in the expenditure of the funds at the local level. See 1972 Duke L.J. at 668. Therefore, it is concluded that the clear intent of the language of the Revenue Sharing Act and its legislative history also warrants dismissal of this suit.[14]

The Court is sensitive to the problems raised by this decision. Expenditures of revenue sharing funds may involve projects in which the environmental impact may be substantial and adverse and the protections embodied in NEPA may not

13. *See* Citizens for Balanced Environment v. Volpe, 376 F.Supp. 806, 812–13 (D.Conn. 1974) for the proposition that mere federal approval of state plans and conformity with general federal requirements by state officials does not constitute the state project a "federal action" within the meaning of NEPA.

14. The Court is cognizant of the argument that 42 U.S.C. § 4332(1) requires agency compliance with NEPA except where compliance is expressly prohibited or impossible. This, of course, was the rationale in *Ely I* for reconciling the Safe Streets Act and NEPA since the policies of both Acts could be advanced without diminishing the force of either Act. This argument could not be made with respect to the Revenue Sharing Act the purpose of which was clearly to preclude federal intervention not specifically required in the Act. 1972 Duke L.J. at 678–79. Furthermore, the statement of the CEQ and the distinction in *Ely II* between revenue sharing and block grants indicates that there is insufficient federal participation in revenue sharing to even consider the applicability of NEPA.

be considered. See 60 Va.L.Rev. at 117. However, this is the inevitable result of a program to extend to state and local governments the responsibility for their own development and the opportunity to pursue and resolve their own perceived objectives and problems, including environmental concerns. The Council on Environmental Quality has clearly made a judgment to except revenue sharing funds from NEPA's applicability. That judgment is concurred in for the reasons stated herein and, therefore, the Court dismisses this suit on the grounds that the plaintiff fails to state a claim for which relief can be granted. Fed.R.Civ.Proc. 12(b)(6).