**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Richard Dale OWEN,**
**Defendant-Appellant.**

**No. 75–1571.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted April 16, 1976.

Decided June 14, 1976.

Eric J. Groves, Oklahoma City, Okl. (David C. Hood, Oklahoma City, Okl., on the brief), for defendant-appellant.

Floy E. Dawson, Asst. U.S. Atty., Oklahoma City, Okl. (John E. Green, Acting U.S. Atty., Oklahoma City, Okl., on the brief), for plaintiff-appellee.

Before HILL and SETH, Circuit Judges, and TEMPLAR,* District Judge.

HILL, Circuit Judge.

Appellant was convicted on two counts of violating 18 U.S.C. § 641. This statute im-

poses federal criminal liability on one who "embezzles, steals, purloins, or knowingly converts to his use or the use of another . . . any record, voucher, money, or thing of value of the United States or of any department or agency thereof . . ." Specifically, appellant was charged with embezzling money held in the checking account of the El Reno, Oklahoma, Urban Renewal Authority (ERURA) which the indictment alleged belonged to the Department of Housing and Urban Development (HUD), an agency of the federal government.

The evidence at trial established that in 1973 appellant was executive director of ERURA and had the responsibility for implementing certain urban renewal projects. In the course of his duties he handled checks made out to individuals as compensation for ERURA taking of their property. Two such checks were involved in this case. One, in the amount of $425, was drawn to the order of a displaced tenant named Edward C. Jones. This check was traced into the bank account of appellant's girlfriend with whom he was living at the time. This transaction occurred in November 1973. In December 1973, an ERURA check for $2,500, payable to the owners of some other property, was deposited in the bank account of a friend of appellant. He kept $500 in payment of a debt and returned $2000 in cash to appellant.

The issue on appeal is whether the money obtained in the above manner was "money . . . of the United States." At trial the government relied on the testimony of a HUD official, Stephen Sid Sedlock, to establish this element of the case. Sedlock's testimony was confusing in many regards,[1]

---

* Honorable George Templar, United States District Judge, District of Kansas, sitting by designation.

1. Much of the difficulty with Sedlock's testimony is that he was testifying concerning matters which are in large part issues of law. The contract under which the grants were made is not in evidence. Neither have we been cited to the statutory provisions authorizing this urban renewal program. We assume this is a Neighborhood Development Program funded under

the provisions of 42 U.S.C. § 1450 *et seq.,* but there are a number of forms of federal financial assistance available to local communities for urban renewal and related projects. *See* 24 C.F.R. § 42.20(h) (1975). Without additional information, it is difficult to determine exactly how ERURA was funded. The case has been briefed in reliance solely on Sedlock's testimony and we will decide it on that basis.

but we can deduce the following essentials from the record.

Sedlock testified ERURA was organized by the city of El Reno and was not an agency of the federal government. He stated it originally was funded by "categorical block grants" made by HUD under a contract with ERURA. This original grant, in the amount of $119,050,[2] was made in either August or October 1972.[3] Apparently, this was the only federal money placed in ERURA's account prior to the embezzlement. Sedlock characterized this as a start-up grant to get ERURA going. Subsequent operating funds were acquired from other sources, primarily from the sale of ERURA promissory notes in the private money market. According to Sedlock, these notes were "guaranteed" by the United States Government.[4] ERURA also received money from rent paid by tenants in property acquired by ERURA. Money from all sources was commingled in one account. ERURA was authorized to make expenditures only in accordance with HUD regulations and periodically gave accountings to HUD.

■ The trial court instructed the jury that ERURA was a "joint adventurer" with HUD and that they were "not to be concerned with the issue of agency" because the court had determined as a matter of law that ERURA was an agent of the federal government and its money was "money . . . of the United States." We hold this instruction was incorrect.

As support for the instruction, the government relies on dictum in *United States v. Candella,* 487 F.2d 1223, 1226 (2d Cir. 1973), *cert. den'd,* 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 872, stating urban renewal is a "joint enterprise of the City and Federal Government." We do not believe this case is authority for the government's position. The issue in *Candella* was whether a false statement made to an urban renewal agency pertained to a "matter within the jurisdiction" of HUD under 18 U.S.C. § 1001.[5] The defendants had submitted false affidavits in support of an inflated claim for payment from the city's urban renewal agency. The claim was subject to 100 percent reimbursement by HUD. As we read *Candella,* the court found urban renewal a "joint enterprise" only in the sense of being a cooperative effort having sufficient HUD control and supervision to bring the "matter within the jurisdiction" of HUD for purposes of 18 U.S.C. § 1001. The court did not hold the urban renewal agency was an agency of the federal government.

In different contexts other cases have held similar local agencies are not agencies

---

**2.** As stated in the text, Sedlock testified ERURA was originally funded by grants. The only amount received at the beginning of the program was the $119,050 which Sedlock called a "requisition fund." HUD records included in the evidence indicate this was probably a temporary loan under 42 U.S.C. § 1452. It is unclear whether Sedlock considered it a grant or a loan.

**3.** Sedlock testified to both dates. We assume he meant the money was authorized in August and disbursed in October, 1972.

**4.** Although Sedlock consistently called this relationship a guarantee arrangement, we doubt that this is strictly accurate. Under 42 U.S.C. § 1452 HUD is authorized to enter loan contracts with local urban renewal agencies which create drawing rights in the local agencies. Section 1452(c) provides that such a loan may be subject to a condition that the local agency obtain private loans, if possible. The local agency is authorized to pledge its government loan contract as security for the private loan. The government will then be obliged to pay out the amount of its obligation under the loan contract to the private lender if the local agency defaults. The local agency would then be indebted to the federal government to repay the loan, unless set off against grant money. The end result is similar to a guarantee. We suspect this is the true nature of the "guarantees" referred to by Sedlock.

**5.** 18 U.S.C. § 1001: "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined . or imprisoned . . . or both."

of the federal government. *Gibson & Perin Co. v. City of Cincinnati,* 480 F.2d 936 (6th Cir. 1973), *cert. den'd,* 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (urban renewal agency not a federal agency under the Administrative Procedure Act); *Vincent v. United States,* 383 F.Supp. 471 (E.D.Ark. 1974); *Hughes v. United States,* 383 F.Supp. 1071 (S.D.Iowa 1973) (local community action agencies not federal agencies for purposes of Federal Tort Claims Act). Local urban renewal agencies are created by city governments, not the federal government. They are more properly characterized as grantees of federal financial assistance than as federal agencies. *Hughes v. United States, supra. See also Harris v. Boreham,* 233 F.2d 110 (3d Cir. 1956).

Even though ERURA was not a federal agency, the government contends its money was as a matter of law "money . . . of the United States" because it included grants from the federal treasury. Appellant contends the grant money ceased to be "money . . . of the United States" when it passed to the local agency. He argues 18 U.S.C. § 641 requires that the money belong to the United States under the law of property.[6] We need not decide whether the grant money was "money . . . of the United States" under § 641 because there is insufficient evidence to warrant a finding that any of the money in ERURA's account at the relevant time was HUD grant money.

On this issue Sedlock, Chief of Mortgage Credit at HUD's Oklahoma City office, testified it was possible that all money in ERURA's account at the time of appellant's embezzlement was received from the private sector. He stated that at some point the original requisition fund of $119,050 was depleted and ERURA functioned entirely on money received from other sources, but he could not say when this occurred. Other statements in his testimony, however, indicate it is likely the money was exhausted before November 1973 when appellant first tapped the till. Sedlock testified the original HUD money was only to keep ERURA going for three or four months until it could achieve private funding. ERURA sold its first notes in December 1972. Sedlock said HUD records indicated ERURA had sufficient funds as of July 1, 1973, to carry it until it could obtain full financing from private lenders. On October 30, 1973 ERURA received $190,000 from note sales. HUD records indicate ERURA expenditures during its first year in excess of the $119,050 which is the only amount Sedlock mentioned as coming directly from HUD.[7]

At best the evidence is inconclusive and there is nothing upon which a jury could base a finding beyond a reasonable doubt that appellant obtained federal grant money. As we said in *Lewis v. United States,* 420 F.2d 1089, 1089–90 (10th Cir. 1970): "In examining the evidence to determine whether it is substantial for purposes

---

**6.** Appellant points out that all decided cases under 18 U.S.C. § 641 have relied on a property interest rationale. *E. g., United States v. Miller,* 520 F.2d 1208 (9th Cir. 1975); *United States v. Alessio,* 439 F.2d 803 (1st Cir. 1975); *United States v. Echevarria,* 262 F.Supp. 373 (D.Puerto Rico 1967). The government contends it has not been expressly held that the statute is so limited and argues for a broader construction. We do not believe the facts on this issue are well developed in this case, and we intimate no opinion on the proper construction of the phrase "money . . . of the United States" as used in 18 U.S.C. § 641.

**7.** As we indicated before, we are not convinced of the technical accuracy of Sedlock's testimony. HUD records not referred to in Sedlock's testimony or in the briefs indicate the entire first year funding of ERURA was through loan contracts, most of which were used to obtain private loans. At the end of the first year, June 30, 1973, these loans were set off against grants totalling $335,884.37. *See* 42 U.S.C. § 1453. As of July 1, 1973, ERURA had accounts payable in excess of cash on hand, but had land inventory sufficient to balance assets and liabilities. It was anticipated that the second action year would again be financed entirely from private loans. During this second year appellant committed his embezzlement. Under this explanation of the evidence, it is still insufficient to show that appellant obtained any federal grant money or any other money which originated with the United States Government.

under consideration, it must do more than merely raise a suspicion of the existence of the facts sought to be proved . . . . And, conviction cannot be based upon evidence which is consistent with both innocence and guilt."

■ In an attempt to satisfy this standard, the government argues the money received from private loans guaranteed by the United States Government was "money . . . of the United States." On this issue we are again confronted with a record inadequate to establish the legal relationship involved. Assuming the private loans were in legal contemplation "guaranteed" by the United States Government, the money never belonged to the United States. Even if it had to pay on the guarantees, the ultimate responsibility for payment rested with the local government agency. The "guarantee" arrangement apparently was a device to enable the local government to obtain loans on the credit of the United States and avoid direct federal expenditures.[8]

We have concluded the trial court erred in determining as a matter of law that ERURA money taken by appellant was "money . . . of the United States." The government's evidence was insufficient to identify the money as "money . . . of the United States." This failure is fatal to the government's case, and appellant's conviction must be reversed.

---

8. Without the benefit of briefs on the exact legal relationship involved, we are reluctant to vouch for the accuracy of the above statements as a matter of law. They are correct, however, based on the evidence in this case.