**UNITED STATES of America, Plaintiff,**

**v.**

**Kenneth Morris GAVIN, Defendant.**

**No. G81–110 CR.**

United States District Court,
W. D. Michigan, S. D.

April 9, 1982.

Martin Palus, Asst. U. S. Dist. Atty., Grand Rapids, Mich., for plaintiff.

Benjamin Logan, Grand Rapids, Mich., for defendant.

## OPINION

BENJAMIN F. GIBSON, District Judge.

The Government has moved for reconsideration of an Order granting a new trial after defendant's conviction for conversion of federal funds. 18 U.S.C. § 641. Defendant has joined in the motion, waiving any objections of timeliness. In doing so, he asks the Court to reconsider its previous denial of his post-verdict motion for judgment of acquittal. Fed.R.Crim.P. 29(c).

The statute, 18 U.S.C. § 641, in pertinent part, provides:

Whoever ... steals, purloins or knowingly converts to his use or the use of another ... any ... money or thing of value of the United States or any department or agency thereof ... shall be fined ...

The issues presented are: 1) whether ownership of the funds Gavin used is a question of law or fact and 2) whether the Government has proven federal ownership.

The case is one of first impression. Its factual setting involves a loan from the Small Business Administration (SBA). Riverside Local Development, Inc. (Riverside) served as the conduit for Tech-Fab's procurement of the loan. On July 26, 1979 the SBA delivered a $17,000.00 check to Riverside and Tech-Fab, a small business owned by Robert Stokes. This represented final payment for Tech-Fab's future acquisition of land, machinery and a building it was to renovate. The check was endorsed by Stokes and deposited in Riverside's account. Concurrently, Stokes and the SBA made provisions for repayment of the loan, a security interest in the machinery and a mortgage on the real property which was to be purchased from the City of Benton Harbor (the City). At the time of these transactions, the City was in the midst of platting the property. Therefore, Riverside was to hold the funds until a warranty deed could be delivered. Meanwhile, Stokes began making repayments on the loan.

During the relevant period, defendant Gavin was both the City Attorney and an officer of Riverside. He withdrew a total of $17,000.00 from the Riverside account for his personal use. Stokes had previously received a conditional deed and possession of the property. The City did not receive this money until December, 1980 when a recordable warranty deed was issued.

The Government has steadfastly contended that it retained a beneficial interest in these funds during this one year hiatus. Therefore, Gavin's use of the funds allegedly constituted a federal crime. The beneficial interest theory of ownership stems from the decision in *United States v. Evans*, 572 F.2d 455 (5th Cir. 1978) and its progeny.[1] The *Evans* Court held that, where funds are in transit and the asserted federal interest is intangible, the key factor in determining ownership is the extent of supervision and control manifested by the statute authorizing payment of the funds. *Evans* at p. 472. Thus, the Government posits that the SBA funds were still in transit while held by Riverside because they had not yet been used for Tech-Fab's benefit by purchasing the building. It then contends that the statute authorizing SBA loans, 15 U.S.C. § 696, gives the Government a beneficial interest under these circumstances.

### QUESTION OF LAW OR FACT

The first issue concerns the propriety of submitting the Government's "beneficial interest" theory to the jury as a factual question. The Court concludes that ownership of the funds was not an issue for the jury in this case.

---

[1]. Subsequent cases adopting the *Evans* rationale include: *United States v. Smith*, 596 F.2d 662 (5th Cir. 1979); *United States v. Maxwell*, 588 F.2d 568 (7th Cir. 1978); *United States v. Johnson*, 596 F.2d 842 (9th Cir. 1979).

Several of the circuits suggest the statutory requirement of federal ownership is purely a jurisdictional question. If the item stolen or converted did not belong to the Government then there is no federal crime with which defendant may be charged. *See, e.g., United States v. Jermendy,* 544 F.2d 640 (2nd Cir. 1976); *United States v. Denmon,* 483 F.2d 1093 (8th Cir. 1973); *United States v. Howey,* 427 F.2d 1017 (9th Cir. 1970); *Baker v. United States,* 429 F.2d 1278 (9th Cir. 1970). If this approach to the ownership issue is taken, then it must be one for the Court to decide. *See, e.g.* Fed. R.Crim.P. 12(b); Wright, Federal Practice & Procedure: Criminal § 193.

Where a non-jurisdictional approach to the issue is taken, the applicable cases suggest no clear answer. Not only do the various circuits provide different conclusions, some circuits have held the issue to be one of law in some cases and one of fact in others. These results are not surprising when examined in the context of the function of the Court and the jury.

■ Generally, the function of the jury is to independently determine the facts and then apply the law as stated by the judge. *United States v. Persico,* 349 F.2d 6 (2nd Cir. 1965); *United States v. Salliey,* 360 F.2d 699 (4th Cir. 1966). Thus, conflicts in the evidence or disputes of fact are matters for jury resolution. *United States v. Parr,* 516 F.2d 458 (5th Cir. 1975). The jury is also charged with the responsibility of determining credibility and drawing conclusions from contradictory premises where the facts are undisputed. It is well-established that a trial judge may withhold a case from the jury where the evidence is legally insufficient to support a conviction or where reasonable minds cannot differ in the conclusions to be drawn. *United States v. Gainey,* 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965).

With specific reference to the ownership issue, two Sixth Circuit cases provide excellent examples of the following statement:

The ownership of property when an issue in a case is a mixed question of law and fact. If the facts are not in dispute and if different inferences cannot reasonably be drawn from [them], ownership is a question for the Court. But where the evidence is conflicting or the facts are in dispute, or are not conclusive, the determination of ownership should be left to the jury under proper instructions ... Hunter, Federal Trial Handbook (punctuation changed).

In *United States v. Bess,* 593 F.2d 749 (6th Cir. 1979), the Court affirmed submission of the ownership issue to the jury as a mixed question of law and fact. Earlier, the Court set aside a conviction in *United States v. Morris,* 541 F.2d 153 (6th Cir. 1976) because the evidence was legally insufficient to establish government ownership of the proceeds of a check. Both cases involved criminal prosecutions under 18 U.S.C. § 641. This Court is of the opinion that, when viewed from the perspective of the proper functions of judge and jury, the case *sub judice* is more analogous to *Morris.*

■ There are no factual disputes here which would impact the question of ownership. Neither is credibility relevant to this determination. The only remaining question is whether reasonable minds might reach different conclusions as to whether the SBA funds were in transit when Gavin used them. The Court thinks not. According to the decision in *United States v. Morris,* 541 F.2d 153 (6th Cir. 1976), a check belongs to its drawee upon delivery. Additionally, a local urban renewal authority is not a federal agency. *United States v. Owen,* 536 F.2d 340 (10th Cir. 1976). Delivery of the $17,000.00 check to Riverside and Tech-Fab vested them with ownership of the funds. The City was not the Government's intended beneficiary—Tech-Fab was the loan recipient. In other words, the funds were actually delivered to the entity entitled to them. Therefore, the case is initially distinguishable from those involving misdirected funds.

Ultimately, however, the Government must show that the applicable statute evidences continuing federal ownership. This involves statutory construction which is generally a matter for the Court, *United*

*States v. Lanni*, 466 F.2d 1102 (3rd Cir. 1972), and involves only a facial examination of 15 U.S.C. § 696 in this case. An interpretation favorable to the Government would permit the Court to instruct the jury that the federal interest had been proven.[2] The jury function might then include determinations of whether: 1) the Government actually sustained damage to its interest, 2) other elements of the crime had been proven and 3) in an appropriate case, whether the funds were in transit. *United States v. Collins*, 464 F.2d 1163 (9th Cir. 1972); *United States v. Evans*, 572 F.2d 455, 470–471 (5th Cir. 1978).

Accordingly, this Court concludes that the question of ownership should not have been submitted to the jury unless factual issues remained after the Court construed the SBA statute. Having so concluded, the merits of defendant's renewed motion for judgment of acquittal must be addressed. The dispositive issue is whether the Government has shown that 15 U.S.C. § 696 provides a continuing federal interest in the funds. If not, all possible jury questions arising from this case are irrelevant.

**2.** The weight of authority appears to approve this procedure where the determination of ownership depends ultimately upon a legal analysis. *United States v. Evans*, 572 F.2d 455 (5th Cir. 1978); *United States v. Miller*, 520 F.2d 1208 (9th Cir. 1976); *United States v. Owen*, 536 F.2d 340 (10th Cir. 1976); *United States v. Alessio*, 439 F.2d 803 (1st Cir. 1971); *United States v. Johnson*, 596 F.2d 842 (9th Cir. 1979).

**3.** During the relevant period the statute in its entirety provided:

§ 696. LOANS FOR PLANT CONSTRUCTION, CONVERSION OR EXPANSION: RESTRICTIONS AND LIMITATIONS

The Administration may, in addition to its authority under section 695 of this title, make loans for plant construction, conversion or expansion, including the acquisition of land, to State and local development companies, and such loans may be made or effected either directly or in cooperation with banks or other lending institutions through agreements to participate on an immediate or deferred basis: *Provided, however*, That the foregoing powers shall be subject to the following restrictions and limitations:

(1) All loans made shall be so secured as reasonably to assure repayment. In agreements to participate in loans on a deferred basis under this subsection, such participation by the Administration shall not be in

## STATUTORY INTERPRETATION

The Government's primary argument is that ownership can be found in the statutory requirement that SBA funds be used for the purpose intended. 15 U.S.C. § 696(2).[3] This factor, standing alone, has been held insufficient to establish a federal interest for purposes of 18 U.S.C. § 641. *United States v. Farrell*, 418 F.Supp. 308 (D.C.M.D. Pa.1976).

The statutes involved in *Evans* and its progeny granted a specific reversionary interest to the Government. There is no similar provision in 15 U.S.C. § 696. In fact, the statutory scheme evidences a loan in the true sense. A reversionary interest is unnecessary. If the borrower defaults, an adequate remedy is available either by an action on the note or foreclosure on the security. Had Tech-Fab been a victim of Gavin's activities, this Court seriously doubts whether the Government would still argue that these were federal funds.

Neither does the statute manifest extensive federal control. The borrower is not

excess of 90 per centum of the balance of the loan outstanding at the time of disbursement.

(2) The proceeds of any such loan shall be used solely by such borrower to assist an identifiable small-business concern and for a sound business purpose approved by the Administration.

(3) Loans made by the Administration under this section shall be limited to $500,000 for each such identifiable small-business concern.

(4) Any development company assisted under this section must meet criteria established by the Administration, including the extent of participation to be required or amount of paid-in capital to be used in each instance as is determined to be reasonable by the Administration. Community injection funds may be derived, in whole or in part, from—

(A) State or local governments;

(B) banks or other financial institutions;

(C) foundations or other not-for-profit institutions; or

(D) a small business concern (or its owners, stockholders, or affiliates) receiving assistance through bodies authorized under this subchapter.

Subsection (1) has since been deleted.

required to maintain certain financial records, file reports, adopt government methods of management, submit to federal oversight or do anything except give security. There was no evidence that either Stokes or the SBA had anything further to do with respect to this transaction. Stokes did exactly as required and became fully obligated to the Government long before Gavin's involvement. Further Government control was neither warranted nor authorized.

■ Absence of these factors leads the Court to conclude, as a matter of law, that this statute does not provide for continued federal ownership of the loaned funds. This essential element of a § 641 violation not having been proven, the conviction cannot stand. Accordingly, the previous order for new trial is hereby vacated. Defendant is entitled to judgment of acquittal.

In granting the defendant's request for a judgment of acquittal, the Court has merely held that the conduct of the defendant did not violate the particular offense for which he was charged. Whether or not such conduct violated other federal or state laws is not before this Court. Therefore, this acquittal operates as an exoneration of the specific charge in the indictment and no other.