**UNITED STATES of America**

v.

**Antonio BARREDA and Maria Barreda.**

**Crim. No. HCR 85–1.**

United States District Court,
N.D. Indiana,
Hammond Division.

April 9, 1985.

420

Gregory A. Vega, Asst. U.S. Atty., R. Lawrence Steele Jr., U.S. Atty., Hammond, Ind., for plaintiff.

Nick J. Thiros, Cohen & Thiros, Merrillville, Ind., for defendants.

## ORDER

MOODY, District Judge.

This matter is before the Court on the Defendants', Antonio Barreda and Maria Barreda, Motion to Dismiss Indictment filed on March 1, 1985. The Government filed a response on March 15, 1985. On March 28, 1985 a hearing was held in which the parties had the opportunity to expound on their respective positions.

The indictment charges the Defendants with a violation of 18 U.S.C. § 371 and multiple violations of 18 U.S.C. § 641. Briefly, the indictment alleges that the Defendants embezzled, stole and converted, to their own use, property of the United States, namely federal revenue sharing funds. The Defendants contend that the indictment must be dismissed because federal revenue sharing funds within the control of a state or local government unit are not the property of the United States Government but are the property of the state or local government unit. Therefore, they contend the indictment fails to allege an offense against the United States and consequently this Court lacks jurisdiction to hear this cause.

18 U.S.C. § 641 provides in relevant part:

\* \* \* \* \* \*

Whoever receives, conceals, or retains [any record, voucher, money, or thing of value of the United States] with intent to convert it to his own use or gain, knowing it to have been embezzled, stolen, purloined or converted ...

18 U.S.C. § 641. Thus, an essential element of any prosecution under Section 641 is that the particular defendant embezzled ... federal "things of value." The Seventh Circuit has consistently held that the proper test for determining whether funds have retained a sufficient federal character to sustain jurisdiction under Title 18 is to look at the supervision and control over the federal funds contemplated and manifested by the federal government. *See United States v. Mitchell*, 625 F.2d 158 (7th Cir. 1980) *cert. denied* 449 U.S. 984, 101 S.Ct. 402, 66 L.Ed.2d 247 (1980) (18 U.S.C. § 641); *United States v. Hamilton*, 726 F.2d 317 (7th Cir.1984) (18 U.S.C. § 665(a)); *United States v. Harris*, 729 F.2d 441 (7th Cir.1984) (18 U.S.C. § 657); *United States v. Bailey*, 734 F.2d 296 (7th Cir.1984) (18 U.S.C. § 641); *United States v. Maxwell*, 588 F.2d 568 (7th Cir.1978) *cert. denied* 444 U.S. 877, 100 S.Ct. 163, 62 L.Ed.2d 106 (1979) (18 U.S.C. § 641). In order to determine whether this test has been met the courts have applied a number of factors including: (1) specific reversionary interest in the federal government, (2) the statutory requirement that funds be used for the purpose intended, and (3) whether the recipient is required by federal law to maintain financial records, file reports, adopt government methods of management, or submit to federal oversight. *See generally United States v. Gavin*, 535 F.Supp. 1345 (W.D.Mich.1982).

In *United States v. Mitchell*, 625 F.2d 158 (7th Cir.1980) *cert. denied* 449 U.S. 984, 101 S.Ct. 402, 66 L.Ed.2d 247 (1980), the Defendant was convicted of violating 18 U.S.C. § 641 by unlawfully attempting to convert a stolen Illinois Public Aid War-

rant. A percentage of money in the state's public aid account was granted to the state by the federal government under 42 U.S.C. § 603. On appeal to the Seventh Circuit, the defendant argued that the warrant was not "money, or a thing of value of the United States" within the meaning of Section 641. Disagreeing, the Seventh Circuit in *Mitchell* affirmed the defendant's conviction by finding that the warrant in question was a "thing of value of the United States." The court reviewed the pertinent statute, 42 U.S.C. § 603 and its implementing regulations at 45 C.F.R. § 200 *et seq.*, and found substantial and sufficient federal supervision and control over the funds granted by the federal government to the state program. More specifically, the court stated:

> As previously stated, this supervision includes quarterly federal reviews and annual audits and state reports with the ultimate sanction for discrepancies in the reports or misuse of the funds being reclamation of the money by the federal government. The fact that this reclamation is normally or even always enforced on an installment basis by reductions in future allotments does not, we believe, remove the funds allotted from the protection provided by § 641. The installment method seems simply the most convenient means to accomplish the reclamation and we find, similarly to the Court's statement in *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 544, 63 S.Ct. 379, 384, 87 L.Ed. 443 (1943), that the statute "does not make the extent of [the fund's] safeguard depend upon the bookkeeping devices used for [its] distribution."

*Id.* at 161.

■ 31 U.S.C. § 6701 *et seq.* is the implementing statute for the federal revenue sharing scheme. The intent of this statute is to return to the states and local communities revenues collected by the federal government so that the state and local governments can spend these funds according to their own perceived demands and objectives and not those of the federal government. *Carolina Action v. Simon,*

389 F.Supp. 1244 (M.D.N.C.1975). As the Defendants state, this scheme has been referred to as a "no federal strings" approach to federal monetary assistance. *See Carolina Action,* 389 F.Supp. at 1248, *see generally Goolsby v. Blumenthal,* 590 F.2d 1369 (5th Cir.1979). The Defendants' argument is basically that once federal revenue sharing funds are disbursed they become the property of the recipient state or local government and are no longer property of the federal government. As mentioned previously, this is not the proper test. While some courts focus on the federal government's property interest in embezzled funds, *see United States v. Collins,* 464 F.2d 1163, 1165 (9th Cir.1972), the courts in this circuit look to the degree of supervision and control contemplated and manifested by the federal government.

■ In the case *sub judice* the Court finds that the funds in question, federal revenue sharing funds, are a "thing of value of the United States" within the meaning of 18 U.S.C. § 641. That is, the federal government retains sufficient supervision and control over federal revenue sharing funds after they are distributed to the state or local government thus constituting the basis for criminal prosecutions under Title 18 of the United States Code. More specifically, a state or local government which receives federal revenue sharing funds is required by the federal government to establish a trust fund in which the entity must deposit all revenue sharing funds received. 31 U.S.C. § 6704(a)(1). The federal statute requires the state or municipality to comply with auditing, accounting and fiscal control procedures conforming to guidelines prescribed by the Secretary of the Treasury ("Secretary"). 31 U.S.C. § 6704(a)(6); 31 C.F.R. § 51.101–109. 31 U.S.C. § 6724(b)(1) requires the recipient entity to submit a year-end report to the Secretary. These reports must contain (1) the amount and purposes for which funds have been expended, and (2) the difference between the actual and proposed use of the payment. *See also* 31 C.F.R. § 51.12. The federal statute also places certain prohibitions and restrictions on the use of federal revenue sharing funds.

Those prohibitions forbid (1) the using of federal revenue sharing funds for payments to influence legislation, and (2) the using of federal revenue sharing funds for discriminatory purposes in violation of the Age Discrimination Act of 1975, the Rehabilitation Act of 1973, and the Civil Rights Act of 1964. 31 U.S.C. §§ 6715 and 6716; 31 C.F.R. §§ 51.52 to 51.58. Finally, the federal government retains the power to reduce, withhold, or suspend revenue sharing funds from a state or municipality if said entity violates any of the prohibitions imposed by the federal government. 31 U.S.C. § 6718; 31 C.F.R. § 51.-218(3)(b)(c)(d). When all the above-mentioned restrictions and requirements are examined together, the conclusion is inescapable that the level of supervision and control the federal government has over federal revenue sharing funds is sufficient for these funds to retain their federal character. Consequently, this Court has subject matter jurisdiction over this cause.

There are no reported cases which discuss whether or not federal revenue sharing funds can form the basis for a federal criminal indictment. The Seventh Circuit has found the requirements of the supervision and control test satisfied for federal funds originating from the Farmers Home Administration, the Comprehensive Employment and Training Act ("CETA"), the Department of Housing and Urban Development, the Social Security Act, and the Higher Education Act of 1965. *See United States v. Bailey, supra* at 300–301 (where checks received from Farmers Home Administration are endorsed by borrowers and given to defendant as loan closing attorney, and defendant was given written instructions regarding transactions by Farmers Home Administration, funds in possession of attorney were "money of the

United States" within meaning of statute prohibiting embezzling public property); *United States v. Hamilton, supra* at 321 (we continue in our view that the nexus between federal funds in the hands of a non-federal agency and the impact of a federal funding program is found in the federal program's continuing responsibility to see that the federal funds are spent as Congress intended); *United States v. Harris, supra* at 446. (The CHA had to obtain HUD's approval for every specific use that it proposed to make of the grant funds, had to maintain and make available to HUD detailed records of expenditures, and had to repay any expenditures that it made and HUD disapproved as well as repay all unexpended funds. The CHA kept the funds in a separate bank account and HUD bought the tiles ... The retention of control gave HUD a sufficient interest in the funds to support a prosecution under section 657); *United States v. Mitchell, supra* at 161 (... supervision includes quarterly federal reviews and annual audits and state reports with the ultimate sanction for discrepancies in the reports or misuse of the funds being reclamation of the money by the federal government); *see also United States v. Maxwell, supra* at 572–573. The Court acknowledges that the federal supervision and control over the funds in the aforementioned cases were much more substantial than in the case *sub judice*. The difference, however, between the contacts in those cases and the federal control over the federal revenue sharing funds in the case *sub judice*, is a mere difference in degree that in no way rises to a difference in kind.[1] The Court is confident in its conclusion that federal revenue sharing funds retain their federal character in the hands of the recipient state or local governmental entity.

---

1. The instant case should be contrasted with *United States v. Gavin,* 535 F.Supp. 1345 (W.D. Mich.1982) in which the court found that funds loaned by the Small Business Administration do not retain their federal character in the hands of the borrower. More specifically, the court stated:

   Neither does the statute manifest extensive federal control. The borrower is not required to maintain certain financial records, file re-

ports, adopt government methods of management, submit to federal oversight or do anything except give security. There was no evidence that either Stokes or the SBA had anything further to do with respect to this transaction. Stokes did exactly as required and became fully obligated to the Government long before Gavin's involvement. Further Government control was neither warranted nor authorized.

Our conclusion is buttressed by the fact that it was the Secretary's intent in enacting the regulations to the revenue sharing statute that the Criminal Code of the United States (Title 18, U.S.C.) shall be applicable to all criminal offenses relating to the expenditure, accounting or reporting of revenue sharing funds. 31 C.F.R. § 51.6. Clearly, in the present case, the charges, conspiracy and conversion of federal funds, fall within the intent of the regulations which allow federal criminal charges to be brought for the illegal expenditure of federal revenue sharing funds. In passing, the Court also notes that the misapplication of federal revenue sharing funds has indeed formed the basis for criminal prosecutions of Title 18 violations. *See United States v. Sorrow,* 732 F.2d 176, 177 (11th Cir.1984) and *United States v. L'Hoste,* 609 F.2d 796, 800 (5th Cir.1980). The Court being duly advised, it is therefore ORDERED that the Defendants' Motion to Dismiss Indictment be and it is hereby DENIED.

Absence of these factors leads the Court to conclude, as a matter of law, that this statute does not provide for continued federal ownership of the loaned funds. This essential element of a § 641 violation not having been proven, the conviction cannot stand.

*Id.* at 1349. Certainly, the federal control and supervision over federal revenue sharing funds is much more extensive. The difference is such that no reasonable comparison can be made.