**UNITED STATES of America, Plaintiff,**

v.

**Edward FREEMAN, Sr., Oceanview-Merced-Ingleside Trucking Co., Thomas Lewis, Glinder Simpson and Bobby Darby, Defendants.**

**No. CR–77–378 WHO.**

United States District Court,
N. D. California.

Dec. 27, 1977.

G. William Hunter, U. S. Atty., David P. Bancroft, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Marcus S. Topel, San Francisco, Cal., for defendants Freeman and Oceanview.

Doron Weinberg, Larson, Stang & Weinberg, San Francisco, Cal., for defendant Lewis.

1. To be precise, on June 23, 1977, Freeman was named in Counts I and II of a five-count indictment. He was named in Counts I and II of a second indictment filed on September 21, 1977, which superseded Counts III and IV of the original indictment.

2. 29 U.S.C. §§ 801 et seq.

3. 18 U.S.C. § 665 provides:

James F. Hewitt, Federal Public Defender, William M. Goodman, Asst. Federal Public Defender, San Francisco, Cal., for defendant Simpson.

Anne Flower Cumings, Cumings, Jordan & Morgan, San Francisco, Cal., for defendant Darby.

OPINION

ORRICK, District Judge.

The motion to dismiss Count II of the indictment raises the question whether it is a crime under 18 U.S.C. § 641 to withhold from the United States and to convert to one's own use moneys which were privately earned through the improper application of federal grant funds. The Court finds that it is not and, accordingly, grants the motion.

I.

On June 23, 1977, defendant Edward Freeman, Sr. was indicted on four counts [1] arising from his role in the administration of federal grant funds. At all times relevant to the indictment, Freeman was, variously, the Program Director, Chairman of the Board of Directors, and a Director of Oceanview-Merced-Ingleside Trucking Co., Inc. ("OMI"), a corporation which received financial assistance pursuant to a Comprehensive Employment and Training Act [2] ("CETA") contract to train truck drivers.

Count I of the indictment charges that Freeman, instead of using the CETA grant funds to establish a truck driver training program as required by the CETA contract, used said funds to rent trucks and trucking rigs for commercial hauling, thereby violating 18 U.S.C. § 665.[3]

"(a) Whoever, being an officer, director, agent, or employee of, or connected in any capacity with, any agency receiving financial assistance under the Comprehensive Employment and Training Act of 1973 embezzles, willfully misapplies, steals, or obtains by fraud any of the moneys, funds, assets, or property which are the subject of a grant or

Counts I and II of the superseding indictment charge that Freeman violated 42 U.S.C. §§ 2703(a) and 2971f [4] and 18 U.S.C. § 2(a) [5] by directing, during his tenure as Program Director, the payment of double salaries to certain officers of OMI who were performing only one job. These officers were to receive CETA contract funds as salary for full-time positions as CETA program instructors and administrators, while contemporaneously receiving a second salary, derived from Economic Opportunity Act [6] ("EOA") funds, for supposedly performing full-time EOA related jobs.

Count II of the indictment charges Freeman and OMI with committing a separate criminal offense, in violation of 18 U.S.C. § 641, by failing to account for or turn over to the United States the earnings generated by the improper application of the CETA funds. 18 U.S.C. § 641 reads as follows:

> "Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or
>
> Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—
>
> Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.
>
> The word 'value' means face, par, or market value, or cost price, either wholesale or retail, whichever is greater."

## II.

The narrow question presented to the Court is whether income privately earned through the misapplication of federal grant funds constitutes "property of the United States" capable of being embezzled under 18 U.S.C. § 641. The defendant asserts that the grant fund earnings possess none of the indicia of "property of the United States" and, therefore, cannot be the subject of a Section 641 violation. Accepting

---

contract of assistance pursuant to this Act shall be fined not more than $10,000 or imprisoned for not more than two years, or both; but if the amount so embezzled, misapplied, stolen, or obtained by fraud does not exceed $100, he shall be fined not more than $1,000, or imprisoned not more than one year, or both.

(b) Whoever, by threat of procuring dismissal of any person from employment or of refusal to employ or refusal to renew a contract of employment in connection with a grant or contract of assistance under the Comprehensive Employment and Training Act of 1973, induces any person to give up any money or thing of any value to any person (including such grantee agency) shall be fined not more than $1,000, or imprisoned not more than one year, or both."

**4.** 42 U.S.C. § 2703 was repealed on January 4, 1975, on which date 42 U.S.C. § 2971f, tracking the identical language, was enacted. These statutes provide:

"(a) Whoever, being an officer, director, agent, or employee of, or connected in any capacity with, any agency receiving financial assistance under this chapter, embezzles, willfully misapplies, steals, or obtains by

fraud any of the moneys, funds, assets, or property which are the subject of a grant or contract of assistance pursuant to this chapter, shall be fined not more than $10,000 or imprisoned for not more than two years, or both; but if the amount so embezzled, misapplied, stolen, or obtained by fraud does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

(b) Whoever, by threat of procuring dismissal of any person from employment or of refusal to employ or refusal to renew a contract of employment in connection with a grant or contract of assistance under this chapter induces any person to give up any money or thing of any value to any person (including such grantee agency), shall be fined not more than $1,000 or imprisoned not more than one year, or both."

**5.** 18 U.S.C. § 2(a) provides:

"Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

**6.** 42 U.S.C. §§ 2701 et seq.

the government's facts as true, the defendant admits that he could be indebted to the government for grant fund earnings which were not contributed to the CETA program or used to offset government grant obligations, and that the government's interest in the grant fund earnings could be perfected through the judicial imposition of a constructive trust. The defendant insists, however, that these remedies are available only in a civil action and are not cognizable under any federal criminal statute. Process exists for the recovery of this income, the defendant argues, but because the government did not have "possession" or "control" over the earnings, they cannot be deemed "property of the United States" within the meaning of Section 641.

The Court notes that 18 U.S.C. § 665 indisputably covers the conversion of federal grant funds as charged in Count I, but does not cover, by the government's own admission, income derived from the private application of these converted funds. The government contends, however, that Section 641 picks up where Section 665 leaves off, thus making it a separate and distinguishable offense to convert the grant fund earnings. The government asserts that the CETA regulatory scheme clearly establishes that the United States has the "requisite pro-tem, contingent, property-type interest" in the grant fund earnings such that a failure to turn them over to the United States constitutes a conversion. The government reaches this conclusion through the following analysis: the CETA contracts require OMI to return to the City of San Francisco all unexpended funds, which are then returned to the Department of Labor; the regulation covering program income[7] requires this income, defined as earnings realized from the grant-supported activities, to be either added by OMI to the project funds for further implementation of project objectives, or deducted by OMI from the federal grant monies to which it would otherwise be entitled; since, in the latter instance, these grant fund earnings would be used to displace money owed by the federal government, the government concludes that it is "property of the United States" within the purview of Section 641. The Court disagrees. The nexus between grant fund earnings and "property of the United States" is too attenuated to bring these earnings within the purview of this criminal statute.

It is hornbook law that criminal statutes must be strictly construed and "cannot be enlarged by analogy or expanded beyond the plain meaning of the words used." *Chappell v. United States*, 270 F.2d 274, 278 (9th Cir. 1959). As stated in *Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 250, 96 L.Ed. 288 (1952), the federal judiciary "should not enlarge the reach of enacted crimes by constituting them from anything less than the incriminating components contemplated by the words used in the statute." The Court holds that the plain meaning of the words "property of the United States" does not encompass the wholly contingent, nonpossessive interest which the United States possessed in the income derived from the grant funds.

In *United States v. Johnston*, 268 U.S. 220, 45 S.Ct. 496, 69 L.Ed. 925 (1925), the defendant was charged, in separate counts, with failure to pay federal tax on boxing match admission fees and, under a predecessor statute of Section 641, with embezzlement of the portion of the receipts which were collected and apportionable as the federal taxes. The Court, speaking through Justice Holmes, upheld the Court of Appeals' reversal of the embezzlement conviction because "under this law the person required to pay over the tax is a debtor and not a bailee. The money paid for the tax * * * is paid with the price of the ticket that belongs to the owner of the show." *Id.* at 226–227, 45 S.Ct. at 496. Freeman's obligation to contribute fund earnings for further implementation of program purposes or to offset them against grant funds owing by the government makes him, like Johnston, a debtor and not a bailee. Thus, he is incapable of embezzling the debt owed.

7. Office of Management and Budget Circular A–102.

The government relies heavily on the case of *Arbuckle v. United States*, 79 U.S.App. D.C. 282, 146 F.2d 657 (1944), where the defendant, the manager of the Senate Restaurant located in the United States Capitol, was convicted under the predecessor statute of Section 641 for embezzling "property of the United States," namely, restaurant receipts. The monies received in the operation of the restaurant were deposited from time to time in a bank account opened in the name of "Senate Restaurant, United States Capitol," by authorization of the Senate Rules Committee. Payment for food purchased, wages of employees, and incidental expenses was made by the defendant, either in cash or by check drawn on the special bank account. Any operating deficit was covered by congressional appropriation. In upholding the conviction under the embezzlement statute, the Court of Appeals for the District of Columbia held:

> "In these circumstances, it may very well be that while these moneys were not public moneys in the sense in which the ordinary revenues of government are public moneys, *they were nevertheless moneys of the United States in the sense of moneys which the United States controlled and which, through an instrumentality of the United States created by Congress, they disbursed.*" *Id.*, 146 F.2d at 659 (emphasis added).

Since the grant fund earnings in the case at bar were neither controlled by Congress nor disbursed through an entity created by the United States, *Arbuckle* is inapposite. These earnings were not CETA funds, were not collected by a government entity, and were never in the possession or control of the government.

Likewise, the government's reliance on *United States v. Gardner*, 42 F. 829 (2d Cir. 1890); *Loewe v. United States*, 135 F.2d 622 (9th Cir. 1943); and *Fowler v. United States*, 273 F. 15 (9th Cir. 1921) is misplaced. In each of those cases, the Court found the property in question to be possessed and/or controlled by the United States.

The motion to dismiss Count II of the indictment is hereby granted.