UNITED STATES of America, Appellee,

v.

Clemens Rolph JOHNSON, Appellant.

No. 78–2025.

United States Court of Appeals,
Ninth Circuit.

April 11, 1979.

---

Howard Hertz, Penelope Cooper, Berkeley, Cal., for appellant.

Edmund D. Lyons, Jr., Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before WRIGHT and KILKENNY, Circuit Judges, and PFAELZER, District Judge.*

KILKENNY, Circuit Judge:

Appellant was indicted, tried by a jury, and convicted of: (1) two counts of theft of federal funds in violation of 18 U.S.C. § 641; (2) two counts of making false statements to a federal agency in violation of 18 U.S.C. § 1001; and (3) eight counts of embezzlement of union funds in violation of 29 U.S.C. § 501(c). He was sentenced to a term of five years imprisonment on each count, the terms to run concurrently and fined a total of $24,000.00. He appeals. We affirm.

## FACTS

The San Francisco Redevelopment Agency, a public agency of the City and County of San Francisco, California, pursuant to

---

* The Honorable Mariana R. Pfaelzer, United States District Judge for the Central District of California, sitting by designation.

Title I of the Housing Act of 1949, 42 U.S.C. §§ 1450, 1451 and 1453, entered into contracts with Local 261 of the International Laborers Union in connection with certain public park and mall maintenance and public weed abatement services. The funds for these projects were provided to the Redevelopment Agency by the Department of Housing and Urban Development pursuant to 42 U.S.C. §§ 1450 and 1453.

Under the terms of the contracts with the union, the funds for public park and mall maintenance and for public weed abatement services were deposited in separate identifiable accounts in the Crocker National Bank. The bank account for the park and mall maintenance fund had to be established under conditions approved by the agency. Upon monthly presentation of the payroll invoices and vouchers to the agency by the contractor, the agency agreed to reimburse the union for the previous one or two months' expenditures. All checks relating to the operation of the contracts had to be countersigned by an authorized representative of the agency. The park and mall maintenance contracts further provided that authorized representatives of the agency *and of the Department of Housing and Urban Development* would have access at all reasonable times to all records, reports, work schedules, files, and other material or information, which in any way pertained to the services to be performed.

The record shows that appellant, a high ranking officer of Local 261, caused thousands of dollars in alleged salaries to be paid to two fictitious employees out of the funds granted to the agency and deposited in the park and maintenance account. Appellant converted these funds to his own use and filed fraudulent applications for social security cards on behalf of the fictitious employees. The record also shows that appellant caused the union to pay, and converted to his own use, excess severance pay for a former employee and obtained reimbursements from falsified restaurant expenses.

Before the commencement of the trial, the appellant requested the district judge to ask the prospective jurors whether they had any disagreement with the rule that a defendant is to be presumed innocent and must be proven guilty beyond a reasonable doubt. The judge refused to question the jurors on this subject.

## ISSUES

I. Did the trial judge err in refusing to ask the prospective jurors about their beliefs regarding the presumption of innocence and the requirement of proof beyond a reasonable doubt?

II. Did the evidence show that the funds converted to appellant's own use were property of the federal government?

III. Did the judge properly instruct the jury regarding embezzlement of union funds and was there sufficient evidence to sustain a conviction on those charges?

### I.

■ We decided this issue adversely to appellant's contention in *United States v. Price*, 577 F.2d 1356, 1366 (C.A.9 1978). The district court need not inquire on *voir dire* as to jurors' beliefs in the presumption of innocence or burden of proof.

### II.

■ It is the appellant's contention that absolute title to the funds passed to the Redevelopment Agency and that the United States had no interest in the funds after they had been transferred to the agency. Consequently, he argues he could not be guilty of a violation of § 641. We disagree. It is clear that the government, under the Housing Act, retains substantial supervision and control over the funds. The relevant regulations provide that the local redevelopment agency must maintain detailed financial records, file annual financial and progress reports, and adopt government-prescribed financial management systems. 24 C.F.R. § 570.2 makes it clear that the primary goal of the community development program, under which the federal funds were supplied, is the development of viable urban communities, including decent

housing, suitable living environment, and expanding economic opportunities, principally for persons of low and moderate income. 24 C.F.R. § 570.506 requires the units of the general local government, such as the San Francisco Redevelopment Agency, to return to the federal government interest earned on grant funds advanced, with a certain defined exception. It also requires such agencies to record the receipt and expenditure of revenues related to the program as a part of the grant program transactions. Additionally, by the provisions of 24 C.F.R. § 570.907, each recipient of the fund is required to submit such financial reports as might be deemed necessary by the Secretary, and maintain records in accordance with federal management circulars which would identify adequately the source and applications of funds for the grant supported activities. These records are to contain information pertaining to the grant awards and authorizations, obligations, *unobligated balances, assets,* liabilities, outlays and *income.* True enough, funds not required for the project initially funded might be retained by the redevelopment agency, but even these funds are required to be applied to other appropriate projects under the provisions of 24 C.F.R. §§ 570.801(b) and 570.803(b).

The redevelopment agency's park and mall maintenance contracts with the union recite in the first two paragraphs that the agency entered into a loan and grant contract with the United States of America for financial aid to the agency under Title I of the Housing Act of 1949, as amended. Johnson signed all of these contracts involving the park and mall maintenance fund as president of the union. There is no question then, that he was fully aware of the language of the contracts which recited the fact that the funds provided by the redevelopment agency were those which were provided to the agency under grant from the United States. Additionally, the contracts require the union to keep records in accordance with prudent business practices to allow authorized representatives of the *Department of Housing and Urban Development* to have access at all reasonable times

to the records, reports, work schedule files, and other materials maintained by the union, which in any way pertain to the services to be performed under the contract.

It is clear to us, and we hold that the grant funds deposited with the San Francisco Redevelopment Agency were deposited in trust with the agency to be held and disbursed in accordance with the terms, conditions, and provisions of the above mentioned legislation and regulations. The fact that the government retained control over the fund to the extent of requiring the agency to use all excess funds for purposes contemplated by the legislation and regulations is additional proof of the supervision and control exercised by the government over the funds and their ultimate use. In turn, the park and mall maintenance contracts between the agency and the union made it clear that the union records were subject to inspection by the United States and that the funds to be disbursed were obtained from the United States and were to be disbursed in accordance with the agency's contract with the United States and the applicable legislation. The interest of the United States in the funds followed those funds into the bank account created under the contracts with the union. Consequently, the appellant's contention that the government had no right, title, or interest in the funds which he converted is groundless. The appellant, as president of the union and as the person who actually signed the contracts and payroll checks, cannot claim he was ignorant of the source and the nature of the funds. In so holding, we recognize that the issue on whether the funds granted to the redevelopment agency remained federal property is a question of law. *United States v. Miller,* 520 F.2d 1208 (C.A.9 1975); *United States v. Jackson,* 436 F.2d 39, 41–42 (C.A.9 1970), *cert. denied* 403 U.S. 906, 91 S.Ct. 2209, 29 L.Ed.2d 682 (1971).

Closely akin to our facts is *United States v. Evans,* 572 F.2d 455 (C.A.5 1978). This case involved the Federal Direct Student Loan Program. The loan funds were administered by participating colleges. The

*Evans'* court stated that the decisions which have upheld convictions under § 641 have generally involved instances in which the government had either title to, possession of, or control over the tangible objects involved. *United States v. Miller, supra; United States v. Caverly,* 408 F.2d 1313 (C.A.3 1969), *cert.* denied 396 U.S. 866, 90 S.Ct. 144, 24 L.Ed.2d 119; *Fowler v. United States,* 273 F. 15 (C.A.9 1921). However, the court went on to state:

> "[T]he critical factor in determining the sufficiency of the federal interest in intangible interests, such as are involved here, is the basic philosophy of ownership reflected in relevant statutes and regulations. (Citations omitted.) *The key factor involved in this determination of federal interest is the supervision and control contemplated and manifested on the part of the government."* *United States v. Evans, supra,* at 472. [Emphasis supplied.]

The views just expressed are fully supported by *United States v. Moore,* 427 F.2d 38 (C.A.5 1970), *cert.* denied 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384; *Arbuckle v. United States,* 79 U.S.App.D.C. 282, 146 F.2d 657 (1944); *Lowe v. United States,* 141 F.2d 1005 (C.A.5 1944).

The statutes and regulations here under scrutiny manifest an underlying congressional intent that the urban funds granted to the agencies under 42 U.S.C. §§ 1450 and 1453 should be utilized under the strictest of supervision, including submission by the union of verified payrolls before additional sums are advanced by the redevelopment agency. The argument that the agency is a separate and distinct branch of the City and County of San Francisco, rather than an agency of the United States, is superficial. The statutes and the regulations, as a precondition to the loan and as part of the contracts permit the government to oversee in substantial part the dispersal of the funds by requiring accountings and other verifications. The agency itself recognized the federal interest in the supervision and control of the funds by inserting in the park and mall maintenance contract provisions which fully recognized the government's in-

terest. We hold that under the relevant statutes and regulations, the government contemplated and manifested sufficient supervision and control over the funds for the park and mall maintenance program to justify the convictions under § 641.

▪ Appellant's case of *United States v. Collins,* 464 F.2d 1163 (C.A.9 1972), is distinguishable. *Collins* involved funds that had been granted to the San Francisco Economic Opportunity Council (EOC) by the Department of Labor. Despite a strong dissenting opinion by District Judge Powell, we held that the forgery of an endorsement on a check drawn against EOC funds did not constitute a theft of government funds so as to sustain a conviction under 18 U.S.C. § 641. The majority in that case held that when a bank pays a draft bearing a forged endorsement, it expends its own money rather than that of its depositor, and that it is an essential element of the crime of stealing government property in violation of 18 U.S.C. § 641 that the government suffer actual property loss. In closing, the majority held the fact that Collins may have committed some crime cannot obscure the failure of the government to prove that he committed the crime with which he was charged. However, on the record before us, the government *is* the loser. The appellant here was authorized to and did sign these checks on the bank. A check made to a fictitious payee may be endorsed by anyone. Cal.Comm.Code, § 3405. Moreover, the facts in *Collins* showed no control by the government over the funds other than a requirement that the funds be kept in a special bank account at a specific bank.

Another case upon which appellant relies is *United States v. Freeman,* 443 F.Supp. 288 (N.D.Cal.1977). In *Freeman,* the defendant had misused Comprehensive Employment and Training Act [CETA] funds furnished to a corporation [OMI] pursuant to a program for training truck drivers. The defendant, instead of using the money for training truck drivers, used it to rent trucks for commercial hauling purposes, on

which he made a profit. He was charged with misappropriation of funds under a statute dealing specifically with CETA funds, 18 U.S.C. § 665, and also for failure to turn over the profits to the United States under 18 U.S.C. § 641. There, the court rejected the government's argument that the profits were United States property on the ground that all unexpended CETA funds given to OMI were to be returned to the government and that any earnings realized by OMI under the program were to be added to OMI's project funds or deducted from other federal grant money to which OMI would be otherwise entitled. In rejecting this argument, the court held that "[T]he nexus between grant fund earnings and 'property of the United States' is too attenuated to bring these earnings within the purview of this criminal statute." 443 F.Supp. at 290. In arriving at this conclusion, the court emphasized that the earnings on the funds " . . . were not CETA funds, were not collected by a government entity, and were never in the possession or control of the government." Because of the distinctions between our factual background and those in *Freeman*, we find no need to discuss *Freeman's* conclusion that the government's right to sue to recover misappropriated grant funds does not render grant fund earnings federal property. Suffice it to say that the money misappropriated here was not from grant fund earnings but from the actual fund itself.

Other cases cited by appellant have received our attention. The facts in those cases were significantly different from the facts in ours and they did not involve funds granted under the same statutes and regulations.

### III.

On appeal, Johnson raises two contentions with respect to the counts involving the embezzlement of union funds.

■ First, he argues that the trial court erred in refusing to give his requested instruction stating, in substance, that in order to convict, the jury must find that he lacked a good faith belief that the expenditures were authorized or would be ratified. This instruction does not differ substantially from the instruction requested in *United States v. Ducharme*, 505 F.2d 691 (C.A.9 1974). As in *Ducharme*, we conclude that the instruction given by the court was sufficient.

■ Next, and finally, appellant argues that there is insufficient evidence to justify conviction on the embezzlement counts in connection with the severance pay and the restaurant charges on the theory that there was no evidence that appellant's actions were not authorized by the union. He argues that the present union president testified that reimbursement of restaurant charges and severance pay for the employees in question had been authorized. Appellant fails to recognize the government evidence that the severance pay that Johnson caused to be paid was far in excess of the amount authorized by the union. Also, his argument overlooks the fact that the restaurant expenses for which Johnson obtained reimbursement were never actually incurred. This contention, therefore, is meritless.

### CONCLUSION

We conclude that the judgments of conviction from which appellant appeals must be affirmed.

IT IS SO ORDERED.