**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Sandy E. GIBBS, Defendant-Appellant.**

**No. 82–1246.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 10, 1983.

Decided April 21, 1983.

Alan Zarky, Los Angeles, Cal., for defendant-appellant.

Richard Marmaro, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before ELY, SCHROEDER, and PREGERSON, Circuit Judges.

PER CURIAM.

A jury convicted Sandy E. Gibbs on twenty counts of embezzlement of federal funds under 18 U.S.C. § 641. On appeal Gibbs contends that one of the elements of embezzlement under Section 641, the federal nature of the funds embezzled, was insufficiently proved.

We find that the evidence presented to the jury on the issue whether the embezzled funds were federal was sufficient to uphold the convictions. Therefore, we affirm the district court.

FACTS

Gibbs founded the Tribal American Consulting Corporation ("TACC" or "the corporation") in May 1972. From then until TACC's dissolution in 1980, Gibbs served as the corporation's president and chairman of the board.

TACC was established to promote educational opportunities for American Indians and to distribute funds for that purpose. The corporation received most of its funds from the federal government. In the two and a half year period covered by the indictment, between 80–86% of TACC's funds—a total of $5,283,523—came from the federal government. Some of the funds were received directly from the federal government; other federal funds flowed to TACC indirectly through state and local agencies. The federal government monitored and controlled the expenditure of all federal funds by requiring periodic reports and audits. TACC commingled federal funds with nonfederal funds received from state and private sources.

From July 1977 through the end of 1979, Gibbs used money from TACC accounts for numerous personal expenditures. He paid his apartment rent and electric bills for seven months with TACC money. He used TACC money to give the corporation's comptroller an expensive wedding reception on the *Queen Mary*. Gibbs purchased with TACC funds airfares for his girl friend and himself to attend the 1978 Orange Bowl in Miami. He also reimbursed his girl friend with TACC money for expenditures she incurred furnishing Gibbs' apartment. Gibbs wrote checks on TACC accounts to pay his ex-wife's automobile insurance and to reimburse his ex-wife after he used her credit card. Finally, Gibbs paid for personal automobile repairs and purchased clothing with TACC funds. In all, he spent $9420.49 of TACC funds on personal items.

In January 1982, a fourth superseding indictment was filed, charging Gibbs with thirty-four counts of embezzlement under 18 U.S.C. § 641. A jury convicted him of twenty of the counts.

SUFFICIENCY OF THE EVIDENCE

To obtain a conviction under 18 U.S.C. § 641, the government must prove that money was intentionally embezzled, stolen or converted, that the money taken was the property of the United States, and that the United States suffered some loss. *See, e.g., United States v. Collins,* 464 F.2d 1163 (9th Cir.1972). Gibbs raises only one issue on appeal: whether there was sufficient evidence to prove that the TACC funds he spent for personal use were the property of the United States.

The government presented evidence that between 80–86% of the funds in the account from which Gibbs embezzled was federal money. In addition, evidence showed that the federal government monitored and controlled these funds. Gibbs contends that this showing is insufficient to support the jury's finding that the embezzled funds were federal. He argues that when federal funds have been commingled with nonfederal funds, and the amount of nonfederal funds exceeded the amount embezzled, it is possible that the funds embezzled were entirely nonfederal.

Although this court has not yet addressed this precise issue, two other circuits have discussed the showing the government must make to prove the federal character of money in accounts commingling federal and nonfederal funds. The Fifth Circuit on two occasions concluded that funds embezzled from accounts commingling substantial amounts of federal with nonfederal money qualify as "money ... of the United States" under 18 U.S.C. § 641 when the federal government has supervised and controlled its money in those accounts. *United States v. Evans,* 572 F.2d 455 (5th Cir.) *cert. denied,* 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978) (defendant embezzled money from delinquent student loan account containing 75% federal funds); *United States v. Smith,* 596 F.2d 662 (5th Cir.1979) (defendant embezzled money from student financial aid account containing 80% federal funds). The Seventh Circuit reached the same conclusion in *United States v. Maxwell,* 588 F.2d 568 (7th Cir. 1978) *cert. denied,* 444 U.S. 877, 100 S.Ct. 163, 62 L.Ed.2d 106 (1979) (defendant embezzled money from student financial aid account containing 88.4% federal funds) and *United States v. Mitchell,* 625 F.2d 158 (7th Cir.), *cert. denied,* 449 U.S. 984, 101 S.Ct. 402, 66 L.Ed.2d 247 (1980) (defendant stole a check from Aid to Families with Depend-

ent Children account containing 50% federal funds).

All of these cases held that federal funds commingled with nonfederal funds did not lose their federal character simply because the account was administered by a nonfederal agency. Each case also held that evidence of federal control and monitoring of those funds was sufficient to support convictions under Section 641.

We recently approved the Fifth Circuit's analysis of the federal character element of a Section 641 violation in a case involving a commingled account. *United States v. Eden,* 659 F.2d 1376, 1380 (9th Cir.1981), *cert. denied* 455 U.S. 949, 102 S.Ct. 1450, 71 L.Ed.2d 663 (1982).[1] However, the unlawful conversion in *Eden* differed in one significant respect from those in *Evans* and its progeny. In *Eden,* the defendant transferred *all* the funds in student financial aid accounts to a different account without the required federal authorization. Thus, although the accounts were approximately 5% nonfederal, it was completely clear that federal money had been converted. In the instant case, however, only a small percentage of the total commingled funds was embezzled. We have not previously ruled on the showing necessary in such a situation to support a jury's finding that funds embezzled are federal.

When federal and nonfederal funds have been commingled, it is difficult to prove whether specific stolen dollars from that account are federal or nonfederal. We indicated in *Eden* that the government's supervision and control of that money is the critical factor in determining the federal character of funds in a commingled account. Evidence on this factor is therefore essential to support a jury's conviction under Section 641. We believe that adequate proof of this factor establishes the embezzlement as a federal crime under 18 U.S.C. § 641.

AFFIRMED.

1. We also approved the Fifth Circuit's analysis of the federal character element of a section 641 violation in *United States v. Johnson,* 596 F.2d 842 (9th Cir.1979). *Johnson* did not involve a commingled account. Therefore, the only question in *Johnson* was whether federal funds retained their federal character when administered by a nonfederal agency. We concluded, relying on *Evans,* that those funds remained federal if the federal government supervised and controlled their use by the nonfederal agency.