**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William R. BAILEY,**
**Defendant-Appellant.**

No. 82–2280.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 9, 1983.
Decided May 11, 1984.*

* This opinion has been circulated among all judges of this court in regular active service. No judge favored a rehearing *en banc* on the question of the conflict with the Ninth Circuit case of *United States v. Collins*, 464 F.2d 1163 (9th Cir.1972).

L. Lee Smith, Asst. U.S. Atty., Gerald D. Fines, U.S. Atty., Springfield, Ill., for defendant-appellant.

Shelley A. Bannister, Bannister & Byrne, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, WOOD, Circuit Judge, and CAMPBELL, Senior District Judge.**

WILLIAM J. CAMPBELL, Senior District Judge.

William Bailey, a former attorney, was charged by the Grand Jury with three violations of 18 U.S.C. § 641 [1] (embezzlement of public funds) and one violation of 18 U.S.C. § 1001 [2] (making a false statement to a government agency). The allegations arose out of certain irregularities which occurred in Farmers Home Administration (FmHA) loan transactions in which Bailey was the closing attorney. The jury found the defendant guilty on all counts and the court sentenced him to concurrent prison terms of ten years as to each of the embezzlement counts and five years on the false statement charge. Bailey appeals his convictions raising issues as to the sufficiency of the evidence, the propriety of the jury charge, the effectiveness of defense counsel, and the severity of the sentence. For the reasons stated below, we affirm.

** The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

1. 18 U.S.C. § 641 provides:
   Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or
   Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—
   Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not

Appellant's convictions arose out of three separate real estate transactions. The lender in each case was the FmHA, an agency of the United States government. The borrowers were private parties. Bailey was the closing attorney in each transaction. However, his responsibilities exceeded those of a normal real estate lawyer engaged in private representation.[3] He was trained and certified by the FmHA to be a closing attorney for its loans and he received specific directions from it regarding his duties with respect to each transaction. Technically, however, he was employed by the borrower although he also acted as the escrow agent for the funds involved in each transaction. The facts of the three transactions involved in this case are summarized below.

### The Johnson Loan

In September 1978 appellant was retained as the closing attorney for a FmHA loan to Janice Johnson. Johnson received a loan of approximately $33,000 to purchase a house from Thomas and Peggy Bein. The Beins had a FmHA mortgage on the house in the approximate amount of $33,000. Bailey received from the agency a United States Treasury check for $33,488 made out to Janice Johnson along with written instructions regarding the transaction. He was directed to use the loan proceeds to satisfy the outstanding loan of

more than $1,000 or imprisoned not more than one year, or both.
   The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

2. 18 U.S.C. § 1001 provides:
   Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

3. For the regulations describing the FmHA's procedures and guidelines for using designated attorneys, see 7 C.F.R. § 1890t.2.

the FmHA and to pay certain fees and costs involved in the closing. Johnson endorsed the check to the defendant who then deposited it in his trust account at the Rock Island Bank. Thereafter, Bailey disbursed approximately $4,200 from the trust account in five separate checks to cover various expenses related to the loan. Under the loan closing instructions, the defendant should have satisfied the FmHA loan by sending back to the agency the balance of the loan proceeds. However, on September 28, 1978, Bailey submitted a loan closing statement which represented that $32,-908.55 had been paid to the Beins to satisfy the outstanding mortgage on the property, but it is undisputed that the appellant had only disbursed $1,426.77 to the Beins.

In February 1980 a FmHA official asked the appellant about the money the agency should have received at the conclusion of the Johnson loan transaction. Bailey stated that he had sent the agency a check for the balance, but approximately a month later the appellant told another inquiring FmHA official that he was still working on the loan and would soon send the agency a check. Nonetheless, the FmHA never received any check from the defendant with regard to the Johnson closing.

Count 1 of the indictment alleged that the defendant had embezzled the loan proceeds from the Johnson loan and Count 4 alleged that the defendant had knowingly made a false statement to the agency in the loan closing statement.

### The Powell Loan

In January 1979 Bailey was retained as the loan closing attorney of a FmHA loan to Vaughn Powell. The loan was for $206,-000 and was intended to permit the borrower to remove the various liens from his farm property and to consolidate his debts. Bailey received specific instructions from the agency to satisfy the various liens, to execute the mortgage documents, and to remit any balance to the FmHA. Powell endorsed the $206,000 United States Treasury check and gave it with another check for $12,042, from an earlier FmHA loan, to the appellant. Bailey deposited the checks in his trust account at the First National Bank of Rock Island. Thereafter, he disbursed $213,042.87. The remaining $4,099.13 was never accounted for and no loan closing statement was ever sent to the FmHA.

Count 2 of the indictment alleged that the defendant's retention of the excess funds constituted embezzlement of United States government property.

### The Weeks Loan

In early 1979 Ronald and Anna Weeks obtained a loan from the FmHA to finance and consolidate their debts including three non-real estate FmHA loans. Two United States Treasury checks were issued by the agency to the borrowers, one for $28,500 and one for $2,000. The appellant was retained as the closing attorney and received instructions from the agency to clear title to the real estate, supervise the execution and recording of a FmHA mortgage, and then to deposit the proceeds into a bank account supervised by the FmHA. Mr. and Mrs. Weeks endorsed the checks to the defendant, who deposited them in his trust account at the Rock Island Bank. However, no creditors of Mr. and Mrs. Weeks were ever paid by Bailey and no money was ever returned to the FmHA. As in the Powell transaction, no closing statement was ever submitted by Bailey to the FmHA. Count 3 of the indictment alleged that the defendant embezzled the entire amount of the proceeds from the loan to Mr. and Mrs. Weeks.

In addition to evidence regarding those transactions, the government introduced bank records showing the activity in the defendant's trust accounts during the relevant time period. The records revealed that on July 26, 1979, approximately one month after depositing the checks from the loan to the Weeks, the defendant withdrew $31,500 to open an account at the Rock Island Bank for a corporation called Yong Sun, Inc. Bailey's business partner, Mrs. Yong Sun Chong, subsequently bought a tavern and liquor store in Rock Island. At

trial, the defendant called Mrs. Chong who testified that she and the defendant were in the liquor business together. She stated that she and Bailey had bought the business for $130,000 and that they had to pay a $40,000 down payment. However, she claimed that they had borrowed the money from the Rock Island Bank although she produced no documentation nor could she recall any of the terms of the loan.

The jury found the defendant guilty of all four counts in the indictment. At the sentencing hearing Bailey testified that he was presently unable to make restitution although he had discussed the matter with his bonding company. He expressed a willingness to pay restitution over a period of time if his business ventures provided sufficient income to do so. In imposing the sentence, the court stated:

THE COURT: Well, Mr. Bailey, the Court has considered this matter very carefully and, as you know, I presided at the trial. The jury was satisfied of your guilt of all four counts, and I am fully satisfied of your conscious guilt in this matter, that you didn't have the capacity to hold a license to practice law that you held.

I have read and considered your long statement and everything that has been said here this morning. We are not involved here with a matter of paying debts or making restitution alone, although I realize that is involved. We are not involved with a matter of adjustment with the bonding company. They took a risk for a premium and their risk proved false as well, all due to your breach of fiduciary responsibility which you knew you undertook when you took your oath to practice law.

Now, I am satisfied that prompt and full restitution is unlikely which makes probation or fines inappropriate in this matter. I agree with Mr. Smith that the matter is aggravated by your status as an officer of the court.

It will be the sentence of the Court that you be remanded to the custody of the Attorney General of the United States for ten years each on Counts I, II and III and five years on Count IV, all to run concurrently with each other. There will be no order on costs. Sent. tr. p. 10. After a brief colloquy with defendant's counsel, the court noted:

As I think you and Mr. Bailey are aware with that in this community in the last year or so a couple of other fiduciary cases where there was a substantial breach of duty and attendant violation of the federal statutes which resulted in similar sentences. I'm trying to be consistent. Sent. tr. p. 11–12.

▇▇▇ Appellant argues that the § 641 convictions must be reversed because the money involved in the real estate transactions was not the property of the government. Bailey contends that once the treasury checks were endorsed by the borrowers the money became the property of the borrowers. Under virtually identical facts, this argument was rejected in *United States v. McIntosh*, 655 F.2d 80 (5th Cir. 1981), *cert. den.* 455 U.S. 948, 102 S.Ct. 1450, 71 L.Ed.2d 662 (1982). However, the appellant suggests that the Fifth Circuit uses a different analysis than this court for determining government property for purposes of § 641 and therefore *McIntosh* should not be persuasive precedent.

We perceive no conflict in the law of the two circuits. In *McIntosh*, the court characterized the Fifth Circuit's test by quoting from *United States v. Evans*, 572 F.2d 455, 472 (5th Cir.1978):

[T]he key factor involved in this determination of federal interest is the supervision and control contemplated and manifested on the part of the government.

In *United States v. Mitchell*, 625 F.2d 158, 161 (7th Cir.1980), *cert. den.* 449 U.S. 984, 101 S.Ct. 402, 66 L.Ed.2d 247 (1981), the court described the appropriate analysis as whether the government retained a sufficient property interest in the funds, *citing United States v. Maxwell*, 588 F.2d 568 (7th Cir.1978), *cert. den.* 444 U.S. 877, 100 S.Ct. 163, 62 L.Ed.2d 106 (1979). However, title to the property is not controlling, *see Maxwell*, 588 F.2d at 573, the determination being based on the government's su-

pervision and control over the property, *see Mitchell*, 625 F.2d at 161. Thus, there is no significant distinction between the two circuits in their criteria for determining government property for purposes of § 641. We also note that the two Circuits have reached the same result on similar facts, *compare Maxwell with United States v. Rowen*, 594 F.2d 98 (5th Cir.1979), *cert. den.* 444 U.S. 834, 100 S.Ct. 67, 62 L.Ed.2d 44 (1979) and *United States v. Smith*, 596 F.2d 662 (5th Cir.1979); and that each circuit cites the other's cases with approval, *see e.g. Mitchell*, 625 F.2d at 161; and *Rowen*, 594 F.2d at 100. Having concluded that there is no conflict between this Circuit and the Fifth Circuit on the legal standard involved, we find the *McIntosh* case to be persuasive and adopt its rationale as dispositive of the issue in this case.

■ Appellant makes two arguments with respect to the sufficiency of the evidence on the § 641 charges which can be dealt with summarily. He contends that there is no evidence to justify the jury's finding that he possessed the requisite criminal intent to commit the offenses. We find there is clearly sufficient evidence to support the jury's determination, for example, the inconsistent responses to the inquiring FmHA officials and the false statement on the Johnson closing statement.

■ Appellant also claims that there is no evidence that he converted any of the government's funds to his own use. He dismisses the government's evidence regarding the transfer of money from the trust account to the Yong Sun, Inc. account by suggesting that Yong Sun Chong's testimony explained the real source of the corporation's down payment. In essence, the appellant is asking us to grant conclusive effect to Yong Sun Chong's testimony on this factual issue. This we cannot do, and there is no basis in the record for overturning the jury's determination.

Appellant argues that the trial court erred in instructing the jury that "[W]hether or not the government was deceived or suffered monetary loss because of the acts charged in the indictment is immaterial." It is conceded that this statement of law is accurate with respect to the § 1001 charge, *see United States v. Hicks*, 619 F.2d 752, 754–755 (8th Cir.1980) (and cases cited therein). However, Bailey contends that the judge's charge directly conflicts with an essential element of the § 641 violation, as stated in *United States v. Collins*, 464 F.2d 1163, 1165 (9th Cir.1972) and its progeny, i.e., that the government must prove it suffered an actual property loss. Since the trial judge read the challenged instruction immediately after defining the terms of the § 641 charges, and before describing the elements of the § 1001 charge, there was a clear possibility the jury was misled if *Collins* is good law. However, after an extensive review of the authorities, we conclude that the court in *Collins* erred and that the government does not have the burden of proving a property loss in order to obtain a conviction under § 641.

In *Collins* the defendant was charged under § 641 for forging and negotiating checks on a bank account funded in part by federal money. At trial the District Court decided, as a matter of law, that the money obtained by the defendant was government property for purposes of the statute. In a two-to-one decision the Court of Appeals reversed on that issue. Utilizing a commercial paper analysis, the majority determined that the funds received were not federal property since, when a bank pays a draft bearing a forged endorsement it expends its own money, not that of the depositor.[4] After reaching that conclusion, the majority stated:

> It is an essential element of the crime of stealing government property in violation of 18 U.S.C. § 641 that the Govern-

---

**4.** In addition to the dissent authored by United States District Judge Charles Powell, the majority's analysis on this issue has been criticized in *United States v. Pavloski*, 574 F.2d 933, 935–936 (7th Cir.1978) and *United States v. Improto*, 542 F.Supp. 904, 908 fn. 7 (E.D.Pa.1982), *aff'd* 707 F.2d 1392 (3rd Cir.1983), *cert. den.* —— U.S. ——, 103 S.Ct. 2457, 77 L.Ed.2d 1336 (1983); *see also United States v. Mitchell*, 625 F.2d at 161 (and cases cited therein).

ment have suffered an actual property loss. 462 F.2d at 1165.[5]

The opinion provided no rationale in support of this requirement but merely cited *United States v. Johnston*, 268 U.S. 220, 45 S.Ct. 496, 69 L.Ed. 925 (1925) and *United States v. Alessio*, 439 F.2d 803 (1st Cir.1971). However, neither of those cases state that an actual property loss is an element of a § 641 violation nor are their holdings based in any way upon that proposition.

In *United States v. Johnston*, the defendant failed to pay the federal tax on admission fees to a boxing contest. Thereafter, he was convicted of failing to pay the tax and embezzling that portion of the fees representing the tax. The District Court vacated the embezzlement conviction, was reversed by the Court of Appeals, but was then upheld by the United States Supreme Court. The Court reasoned that:

> It seems to us that under this [tax] law the person required to pay over the tax is a debtor and not a bailee. The money paid for the tax is not identified at the outset but is paid with the price of the ticket that belongs to the owner of the show. We see no ground for requiring the ticket office of a theatre to create a separate fund by laying aside the amount of the tax on each ticket and to keep it apart, either in a strong box or as a separate deposit in a bank. 268 U.S. at 226–227, 45 S.Ct. at 496–97.

The court's holding was that the portion of the funds representing the tax had not become the government's property in the hands of the defendant and, therefore, its retention by the defendant could not constitute embezzlement. This was simply an application of the principle previously recognized in *United States v. Mason*, 218 U.S. 517, 31 S.Ct. 28, 54 L.Ed. 1133 (1910) that where a debtor-creditor relationship exists the unlawful retention of funds by the debtor is not embezzlement. Nowhere in the opinion in *Johnston* was the issue of the existence of a government property

loss ever mentioned. Therefore, we do not find that *Johnston* is authority for the proposition stated in *Collins*.

In *Alessio*, the defendant was charged under § 641 with larceny of government property. One of the items of property allegedly stolen from the government agency was United States currency which was maintained in a petty cash fund. At trial, defense counsel attempted to show that the cash was actually owned by an employee who owed it to the government. The trial court precluded this defense, however, by ruling that the money belonged to the government. The Court of Appeals reversed, stating:

> The court could properly make a ruling of law with respect to title, predicated upon findings of fact which it left to the jury. However, it is clear that the court did more. It left nothing to the jury. It made a "finding" that the money belonged to the government, which was not only an essential element in the government's case, but depended upon an acceptance of the testimony of the government witnesses. The court cannot make a finding accepting the government's testimony, no matter how clear it may be; the burden still remained on the government to prove the money in the fund belonged to it. 439 F.2d at 804.

Thus, the court in *Alessio* focused strictly on the requirement of § 641 that the property misappropriated must be found by the jury to be government property. There is no discussion in the opinion of the need to show an actual property loss and no such requirement can be properly inferred from its holding. Therefore, we conclude that the *Alessio* case also does not support the principle stated in *Collins*.

Thus, our analysis of the *Collins* case reveals there was no explanation for the court's promulgation of the essential element that the government must prove a property loss and the cases cited as authority for the proposition do not support it. In subsequent cases, the Ninth Circuit has

---

**5.** This Circuit expressed some doubt about this proposition in *United States v. Mitchell*, 625 F.2d at 161–162, but determined that it did not need to decide the issue.

reiterated the requirement but still has provided no explanation for it, *see United States v. Johnson*, 596 F.2d 842, 846 (9th Cir.1979); *United States v. Hughes*, 626 F.2d 619, 621 (9th Cir.1980); *United States v. Gibbs*, 704 F.2d 464, 465 (9th Cir.1983); *United States v. Long*, 706 F.2d 1044, 1048 (9th Cir.1983); *see also United States v. Fleetwood*, 489 F.Supp. 129, 132 (D.Or. 1980). Other courts have adopted the principle from the *Collins* case but have also provided no analysis for it. *United States v. Evans*, 572 F.2d 455, 471 (5th Cir.1978); *United States v. Forcellati*, 610 F.2d 25, 30 (1st Cir.1979), *cert. den.* 445 U.S. 944, 100 S.Ct. 1342, 63 L.Ed.2d 778 (1980); *United States v. Farrell*, 418 F.Supp. 308, 310 (M.D.Pa.1976); *United States v. Edwards*, 473 F.Supp. 81, 82 (D.Mass.1979); *United States v. Gavin*, 535 F.Supp. 1345, 1348 (W.D.Mich.1982). Thus, despite a raft of recitations, no explanation has been provided for the conclusion that loss is an essential element of a § 641 violation. Therefore, we must proceed to an independent analysis of the statute.

■ We begin with the premise that when Congress utilizes a common law term or a legal term with an established meaning, the courts should apply the accepted definition absent a clear indication to the contrary, *see Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 249–50, 96 L.Ed. 288 (1952); *United States v. Turley*, 352 U.S. 407, 411, 77 S.Ct. 397, 399, 1 L.Ed.2d 430 (1957). In *Morissette* the court analyzed the legislative background of § 641 and concluded:

The history of § 641 demonstrates that it was to apply to acts which constituted larceny or embezzlement at common law and also acts which shade into those crimes but which, most strictly considered, might not be found to fit their fixed definitions. 342 U.S. at 269, fn. 28, 72 S.Ct. at 253, fn. 28.

Therefore, we must look to the historical development of embezzlement to determine its definition in the context of the statute.

■ Embezzlement is a venerable concept but is not, technically speaking, a creature of common law. It was created and defined by statute in England in 1799 [6] and was subsequently adopted by legislatures in the United States. Basically, embezzlement is common law larceny extended to cover situations in which the stolen property initially comes into possession of the defendant without a trespass. Through frequent use and analysis it has obtained a settled meaning:

Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. It differs from larceny in the fact that the original taking of the property was lawful, or with the consent of the owner, while in larceny the felonious intent must have existed at the time of the taking. *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895).

The elements of embezzlement are:

(1) a trust or fiduciary relationship, (2) that the property claimed embezzled is embraced within the meaning of the statute, (3) that it came into the possession or care of accused by virtue of his employment, (4) it is property of another, (5) that his dealing therewith constituted a fraudulent conversion or appropriation of same to his own use, and (6) such was with the intent to deprive the owner thereof. *United States v. Powell*, 294 F.Supp. 1353 (E.D.Va.1968), *aff'd* 413 F.2d 1037 (4th Cir.1969); *see also* 29A C.J.S. *Embezzlement* § 5 (1965).

■ The courts have also had ample opportunity to determine what is irrelevant to an embezzlement charge. Proof of the vic-

---

**6.** In *Rex v. Bazeley,* 2 East P.C. 571, 168 Eng.Reprint 517 (1799), a bank teller was charged with larceny for appropriating to his own use cash received from a customer in the course of business. Based on the technical requirement of larceny that the original taking be unlawful, the defendant was acquitted. In response to this unpopular decision, a statute was passed which first defined embezzlement as a criminal offense, 39 Geo. III, c. 85 (1799), *see* 3 Wharton's Criminal Law § 395 (14th ed. 1980).

tim's property loss has consistently been held to be unnecessary to prove embezzlement, *Robinson v. United States*, 30 F.2d 25, 28 (6th Cir.1929); *Mulloney v. United States*, 79 F.2d 566, 581 (1st Cir.1935), *cert. den.* 296 U.S. 658, 56 S.Ct. 383, 80 L.Ed. 468 (1936); *Rakes v. United States*, 169 F.2d 739, 743 (4th Cir.1948), *cert. den.* 335 U.S. 826, 69 S.Ct. 51, 93 L.Ed. 380 (1948); *Golden v. United States*, 318 F.2d 357, 361 (1st Cir.1963); *United States v. Weaver*, 360 F.2d 903, 905 (7th Cir.1966). It is also settled law that proof that no loss was suffered by the victim is not a defense to an embezzlement charge, *Weinhandler v. United States*, 20 F.2d 359, 362 (2nd Cir. 1927), *cert. den.* 275 U.S. 554, 48 S.Ct. 116, 72 L.Ed. 423 (1927); *House v. United States*, 78 F.2d 296, 300 (6th Cir.1935); *Hancey v. United States*, 108 F.2d 835, 837 (10th Cir.1940); *Dobbins v. United States*, 157 F.2d 257, 259 (D.C.Cir.1946), *cert. den.* 329 U.S. 734, 67 S.Ct. 99, 91 L.Ed. 634 (1946); *see also* 29A C.J.S. *Embezzlement*, § 25b (1965).

The rationale underlying these holdings was clearly demonstrated in *Elmore v. United States*, 267 F.2d 595 (4th Cir.1959). Elmore was the manager of a grain storage warehouse in which the Commodity Credit Corporation (CCC), a Federal agency, stored fungible grain. The defendant was charged and convicted, *inter alia*, of embezzling quantities of wheat belonging to the CCC. The defendant argued on appeal that the district court should have directed a verdict for him on the embezzlement charges because he was able to produce sufficient wheat upon the demand of the CCC. However, the Court of Appeals rejected this contention:

> The present case is based on the charge that the defendant, having lawful custody of the grain, made use of it as if it were his own and the charge was sustained by proof that he actually withdrew grain of the C.C.C. without the production of warehouse receipts, sold it at a profit and replaced it with grain which he had bought from the C.C.C. at a discount, for restricted use, and sold without restriction in violation of his con-

tract with the Corporation. We are at a loss to understand, in view of these facts, the contention that there was no evidence that the defendant intended to convert the wheat, unless it is meant that it was his intention to replace it after he had used it for his own purposes. But neither the intention to replace nor the actual replacement is a defense when conversion is proved. *The criminal sanction of the statute is imposed to prohibit the unlawful use of another's property, and the statute does not permit the converter to subject the owner to the risk of loss and relieve the converter of criminal liability if his operations are successful and he makes restitution.* 267 F.2d at 601. [Footnote deleted, emphasis supplied.]

This policy is also consistent with the purpose of § 641 which is to provide a sanction for intentional conduct by which a person either misappropriates or obtains a wrongful advantage from government property, *see Morissette v. United States*, 342 U.S. at 271, 72 S.Ct. at 254. The additional requirement of proof of the victim's property loss is not consistent with the settled definition of embezzlement nor does it implement, in any fashion, the policy behind the statute. Congress intended to adhere to the traditional elements of embezzlement and if there was to be any deviation it was to be in the direction of eliminating technical requirements, not adding new ones, *see Morissette*, 342 U.S. at 269, 72 S.Ct. at 253 quoted *supra*, p. 303; *see also United States v. Howey*, 427 F.2d 1017, 1018 (9th Cir.1970). We note that other federal criminal statutes which are similarly designed do not require proof of the victim's property loss; *Elmore v. United States*, 267 F.2d 595, 601 quoted *supra* p. 304 (15 U.S.C. § 714m(b), Embezzlement of property from Commodity Credit Corporation); *United States v. Fortunato*, 402 F.2d 79, 81 (2nd Cir.1968) *cert. den.* 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463 (1969) (18 U.S.C. § 656, Theft, embezzlement or misapplication by bank official or employee); *United States v. Scheper*, 520

F.2d 1355, 1358 (4th Cir.1975) (18 U.S.C. § 656); *United States v. Landers,* 576 F.2d 94, 96 (5th Cir.1978) (18 U.S.C. § 656); *United States v. Daley,* 454 F.2d 505, 509–510 (1st Cir.1972) (18 U.S.C. § 664, Theft or embezzlement from employee benefit plan); *United States v. Coleman,* 590 F.2d 228, 230 (7th Cir.1978) *cert. den.* 440 U.S. 980, 99 S.Ct. 1786, 60 L.Ed.2d 239 (1979) (18 U.S.C. § 665, Theft or embezzlement from Manpower funds); *United States v. Gibson,* 675 F.2d 825, 828 (6th Cir.1982) *cert. den.* 459 U.S. 972, 103 S.Ct. 305, 74 L.Ed.2d 285 (1982) (29 U.S.C. § 501(c), Embezzlement of assets of a labor organization).

■ In summary, we must disagree with the Ninth Circuit (and those courts which have followed it) as to whether proof of the government's property loss is an essential element of 18 U.S.C. § 641. Our review of relevant authorities provides no support for the proposition and the *Collins* case is unpersuasive. We are not, of course, eager to create a conflict between the Circuits but it is necessary in this case. While in most situations the government would have no difficulty proving a property loss, cases have arisen where the requirement creates cumbersome and hypertechnical problems, *see e.g. United States v. Gibbs, supra* and *United States v. Edwards, supra.* We see no reason to permit this irrelevant consideration to confuse the jury and to burden the judge. Therefore, we now hold that proof of the government's property loss is unnecessary to prove a violation of 18 U.S.C. § 641. Based on that determination, we find no error in the judge's charge to the jury in this case.

■ With respect to the § 1001 conviction, the appellant argues that the government failed to prove that the misrepresentation on the Johnson closing statement related to a material fact. Materiality is an essential element of a § 1001 charge, *United States v. DiFonzo,* 603 F.2d 1260, 1266 (7th Cir.1979), *cert. den.* 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980) (and cases cited therein). We believe

there is no merit to the contention that an escrow agent's statement regarding the disposition of approximately $33,000 is immaterial to the government agency that is making the loan. The discussion in *United States v. McIntosh,* 655 F.2d at 82–83 is directly on point and supports our position. Further elucidation is unnecessary.

■ The appellant suggests that the district judge erred in sentencing him because he stated that "I am satisfied that prompt and full restitution is unlikely which makes probation or fines inappropriate in this matter, Sent. tr. p. 10. Quoted alone and out of context, it might appear that the court's statement violates *United States v. Wiley,* 267 F.2d 453 (7th Cir.1959) and *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970). However, in the context of the judge's entire explanation for the sentence, quoted *supra* p. 300, we find that it is clear that there were other justifiable considerations underlying the sentencing decision and therefore we find no error.

■ Finally, the appellant argues that his attorney's conduct denied him effective assistance of counsel. The standard of review for this question is whether the defendant received "legal assistance which meets a minimum standard of professional representation," *United States ex rel. Williams v. Twomey,* 510 F.2d 634, 641 (7th Cir.1975), *cert. den.* 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975). The most significant allegation regarding ineffective assistance is that defense counsel told the jury in his opening statement that he would put the defendant on the stand to explain the transactions. However, the defendant did not take the stand. Defendant's attorney explained the change in plans in his closing argument by saying that the government had failed to prove its case, implying thereby that the defendant's testimony was unnecessary.[7] We believe this was a legitimate tactical decision. It could have favorably influenced the jury by sug-

---

7. We note that the appellant does not argue that his counsel at trial did not obtain his consent

for this decision or that he prevented him from taking the stand.

gesting the defense was so confident in the weakness of the government's case that rebuttal was unnecessary. This strategy could also have disrupted the government's case, especially if it had saved some damaging evidence to use in its cross-examination of the defendant. There are numerous other tactical considerations which could have motivated the change in plans. The fact that the strategy did not work is not a basis for the finding of ineffective assistance, *see United States v. Weston,* 708 F.2d 302, 306 (7th Cir.1983). The appellant notes other alleged errors on the part of defense counsel but, even considered in the aggregate, they do not constitute "grossly incompetent professional conduct," *Williams v. Twomey,* 510 F.2d at 640.

For the reasons stated above, the convictions are affirmed.