UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 97-4681

MICHAEL S. SOFIDIYA, SR.,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CR-97-21-A)

Submitted: September 30, 1998

Decided: October 23, 1998

Before WIDENER, ERVIN, and LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Gregory Beckwith, PHILLIPS, BECKWITH & HALL, Fairfax, Vir-
ginia, for Appellant. Helen F. Fahey, United States Attorney, Stephen
P. Learned, Assistant United States Attorney, Alexandria, Virginia,
for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Michael S. Sofidiya appeals his conviction and sentence for one count of embezzlement of postal funds, 18 U.S.C.§ 1711 (1994), and two counts of conversion of United States property, specifically money orders, 18 U.S.C.A. § 641 (West Supp. 1998). Sofidiya contends the trial court erred in denying his motion to dismiss the indictment, or alternatively to suppress the Government's evidence due to the destruction by the Government of allegedly exculpatory evidence. Sofidiya also contends: (1) there was no evidence that the Postal Service suffered any loss; (2) bank records and postal records were admitted in evidence in error; and (3) the sentence was based upon an incorrect application of the Sentencing Guidelines. Finding no reversible error, we affirm.

Sofidiya was employed by the United States Postal Service as a window supervisor. He provided technical direction to other window clerks, reviewed and consolidated their work, and prepared the daily bank deposit containing cash and checks clerks received from customers. The evidence at trial showed that Sofidiya created an elaborate scheme to embezzle funds. As a window clerk, Sofidiya received checks made payable to the United States Postal Service from customers in exchange for the purchase of postage meter settings. Sofidiya put postage on the meters, entered the transaction on his Integrated Retail Terminal ("IRT"), which is similar to a cash register, provided the customer a receipt, then voided the transaction. Sofidiya would hold on to the check rather than return it to the customer. The new postage meter setting was entered on Meter Settings Form 3610.

Several days later, Sofidiya would include the check in a deposit in exchange for embezzled cash of the same amount. Therefore, the total deposit would reflect the total amount of sales for that day. However, less cash was deposited than was collected by the window clerks. Sofidiya would also use the check to reduce his stamp stock accountability by recording non-existent stamp sales. He would also exchange the check for smaller checks which totaled the amount of the withheld check. He would then use the smaller checks to compensate for subsequently embezzled cash receipts. From September 1992

2

and continuing until September 1993, Sofidiya embezzled approximately $90,000.

In May 1993, while Sofidiya was on vacation, the Postal Service removed two filing cabinets from his office. It was never established why the cabinets were removed. The cabinets were taken to a nearby building and presumed destroyed when the building was destroyed.

Sofidiya contends that the indictment should have been dismissed, or alternatively, the Government's evidence suppressed because the Government was derelict in failing to take affirmative steps to preserve exculpatory evidence allegedly contained in the cabinets. He also contends an investigator wrongfully destroyed evidence.

In California v. Trombetta, 467 U.S. 479 (1984), the Supreme Court held that the Government had a limited duty to preserve evidence. In order to impose the duty, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489. In Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988), the Supreme Court extended the protection to evidence which is "potentially useful," but only if the defendant can demonstrate that the Government exercised bad faith in its failure to preserve the evidence.

Upon our review of the record, we find that Sofidiya failed to satisfy the required showing under either Trombetta or Youngblood. It was mere speculation that the relevant documents were in the cabinets when they were removed from Sofidiya's office. In addition, Sofidiya failed to show the exculpatory significance of any of the documents or that he could not obtain comparable evidence by other means.

For instance, Sofidiya contends that completed PS Forms 17 were in the cabinets. According to Sofidiya, such forms would reflect transfers of stamp stocks to other window clerks. Sofidiya conceded that a copy of the same form was given to the receiving window clerk at the time of the transfer. He never established that those copies were unavailable.

3

Sofidiya failed to demonstrate the relevance of PS 1908 forms which, according to Sofidiya, showed if there were any shortages or overages in the daily bank deposit. Sofidiya's scheme involved depositing funds equal to what was collected on that day. Whether there were shortages or overages was irrelevant. Furthermore, the Government showed that copies of the forms were maintained by the accounting department and available for his use. The Government also showed that any information on missing individual PS 1412 and 3603 forms was available on consolidated PS 1412 and 3603 forms.

As for the forms admittedly destroyed by John Evans, a postal service employee who investigated some of Sofidiya's transactions, it was never shown that those forms were relevant. They did not concern any irregular transactions.

Even if Sofidiya were able to show the potential usefulness of any of the documents he now claims were destroyed, he fails to show the Government's bad faith. The destruction of the filing cabinets appears to have been inadvertent. See United States v. Sanders, 954 F.2d 227, 231 (4th Cir. 1992) (defendant's due process rights were not violated when videotape of bank robbery was inadvertently erased). As for the forms destroyed by Evans, it was shown that he believed the forms, which were not useful to him in investigating the irregular transactions, should have been destroyed in accordance with the Postal Service's retention policy.

Thus, we find that the district court appropriately denied Sofidiya's motion to dismiss, or alternatively to suppress the Government's evidence.

Sofidiya's contention that the Government failed to prove the loss of property with regard to the withheld checks or the money orders is without any merit. We note that the prosecution need not show that the victim of the embezzlement suffered an actual loss in the value of its property. See United States v. Stockton , 788 F.2d 210, 219 n.13 (4th Cir. 1986); but see United States v. Gibbs , 704 F.2d 464, 465 (9th Cir. 1983) (to obtain a conviction under § 641, the government must prove that the United States suffered some loss).

Here, the Government suffered a loss. Sofidiya set a customer's postage meter, collected a check, and voided the transaction without

4

resetting the postage meter or returning the check. He would convert the check for his own purposes. The Government obviously suffered a loss of money due to the setting of the postage meters for which it did not receive payment.

As for the money orders, Sofidiya asserts that he had a payroll check and a refund check that could have been used to purchase the money orders. The evidence showed that Sofidiya withdrew money orders for himself without submitting a voucher or logging the sale on his IRT. After Sofidiya negotiated the money orders, he was questioned by his supervisor. He initially denied receiving the money orders, then admitted purchasing them with a NationsBank check. He then claimed to have purchased the money orders with a paycheck, a credit union check and other checks. Finally, he claimed that he had overages on the days the checks were purchased and the accounting department had issued a form showing the overages. Further investigation with the accounting department could not uncover the forms. We find, taking the view most favorable to the Government, that the evidence was sufficient to support the jury's verdicts regarding the conversion of the money orders. See Glasser v. United States, 315 U.S. 60, 80 (1942).

Sofidiya contends that the district court abused its discretion in admitting evidence of bank records and money orders under Fed. R. Evid. 803(6)--the business records exception, because a proper foundation was not laid by an appropriate witness. Under Rule 803(6), a custodian or an otherwise "qualified witness" can lay the evidentiary foundation to ensure the records' trustworthiness. A "qualified witness" is not required to have "personally participated in or observed the creation of the document," United States v. Moore, 791 F.2d 566, 574 (7th Cir. 1986), or to have known who actually recorded the information, see United States v. Dominguez, 835 F.2d 694, 698 (7th Cir. 1987). There is no requirement that the witness be able to personally attest to its accuracy. See United States v. Duncan, 919 F.2d 981, 986 (5th Cir. 1990). The term "qualified witness" is interpreted broadly. It requires only someone who understands the system used to record and maintain the information. See Moore, 791 F.2d at 574-75. "The witness `need only be someone with knowledge of the procedure governing the creation and maintenance of the type of record

5

sought to be admitted.'" Dominguez, 835 F.2d at 698 (quoting United States v. Keplinger, 776 F. 2d 678, 693 (7th Cir. 1985)).

The Government called bank employee Linnea Viddo, a Vice President, to lay the foundation for the admission of bank records. Viddo is responsible for retrieving bank records pursuant to a grand jury subpoena. Sofidiya contends that Viddo did not have personal knowledge concerning the compilation of the bank records relating to the questionable deposits. But it is without a doubt that she was familiar with the procedure used to generate the records. Sofidiya fails to establish any indication that the procedure indicated a lack of trustworthiness.

Likewise, Travist Wiggins, National Money Order Coordinator for the Postal Inspection Service, was able to explain how money orders are maintained on microfilm in setting the foundation for the admission of microfilm copies of Sofidiya's stolen money orders. The court did not abuse its discretion in admitting evidence of the bank records and money orders.

Finally, Sofidiya challenges the court's decision to enhance his offense level eight levels for a loss of greater than $70,000 under U.S. Sentencing Guidelines Manual § 2B1.1(b)(1)(I) (1995) and two levels for abusing a position of trust under USSG § 3B1.3.

With regard to the eight-level increase, Sofidiya repeats his argument that the Government was unable to prove a loss. Factual findings for sentencing purposes are reviewed for clear error. See United States v. Cutler, 36 F.3d 406, 407 (4th Cir. 1994). Clearly, the Government established a pattern of lost funds due to Sofidiya's scheme.

With regard to the two-level enhancement, Sofidiya asserts that he was nothing more than "a glorified bank teller." As a window supervisor, he had more responsibility than a bank teller or window clerk. He was responsible for collecting all the cash and checks from other tellers at the end of the day. He then prepared the bank deposit, which was a key component to his scheme. Thus, we do not find the court clearly erred in finding that Sofidiya abused a position of trust.

6

Accordingly, we affirm the convictions and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

7